# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

LIVE BRANDS HOLDINGS, LLC,

    Plaintiff,

  v.

GASTRONOMICO GRACIAS A DIOS,
SOCIEDAD RESPONSABILIDAD
LIMITADA de CAPITAL VARIABLE;
XAIME NIEMBRO ALVAREZ;
PABLO LOPEZ VARGAS;
JOSE ENRIQUE JIMENEZ BARCENAS;
and OSCAR HERNANDEZ SANTIAGO,

    Defendants.

Case No. 1:20-cv-1213 (JPC)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**

# INTRODUCTION

Defendant Grupo Gastronomico Gracias a Dios, Sociedad de Responsabilidad Limitada de Capital Variable ("GAD") and its shareholders Defendants Xaime Niembro Alvarez, Pablo Lopez Vargas, Jose Enrique Jimenez Barcenas, and Oscar Hernandez Santiago hereby move under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff Live Brand Holdings, LLC's Amended Complaint in its entirety with prejudice.

This dispute concerns a Memorandum of Understanding dated July 12, 2018 ("MOU") between Plaintiff's purported predecessor-in-interest (Domaine Select Wine & Spirits, LLC ("DSWS")) and GAD.[1]  The MOU expired on its own terms on September 30, 2018.  The parties did not execute Definitive Agreements by that date and nothing about any deal was binding after the September 30, 2018 expiration date.

In short, the parties bound themselves to an express deadline by which to consummate the deal.  Because the Definitive Agreements referenced in the MOU were never executed, *no* contractual rights and obligations existed beyond the September 30, 2018 deadline.  Plaintiff has not and cannot plead the existence of any enforceable contractual rights or obligations post September 30, 2018 and thus dismissal is warranted.

---

[1] Plaintiff Live Brand Holdings acquired DSWS's interest in an unknown transaction.  What is known is that Plaintiff was not a party to the MOU and presumably has no first-hand knowledge of the MOU or its negotiations by the parties.  The MOU is attached as Exhibit 1 to Plaintiff's Amended Complaint, ECF No. 15.

## STATEMENT OF FACTS[2]

The MOU identified a sphere of desirable joint business activity between GAD, a supplier of Mezcal and other distilled spirits, and DSWS, a distributor and importer of wine and spirits.  Amended Complaint, Exhibit 1, ECF No, 15-1 (at 1 of 8 pages).  Under the MOU, the two companies would (among other things) "combine their respective expertise and relationships" to promote the sale of GAD products.  *Id*.  The parties in the MOU were clear about the goals of the potential collaboration and outlined the steps that needed to be taken to effectuate their joint efforts (*id*., ¶¶ 1-6 (pages 1-4 of 8), including reduction to Definitive Agreements by a date certain.  *Id*. at ¶ 8 (page 4 of 8).  While the MOU was binding in certain respects during its term, the parties made clear that there would be no deal if the MOU expired without the execution of the Definitive Agreements:

> **8.**     **Binding MOU**. The parties acknowledge that is the intent of the Parties to be bound by the provisions of the MOU, subject to the last sentence of Section 4(a) *until the earlier* of September 30, 2019 or the date of execution of the Definitive agreements and other related agreements.[3]

*Id*. (emphasis added).

By its express terms, the only potential remedy for the expired MOU was a refund to GAD of out-of-pocket expenses it incurred, not for specific performance or any other enforcement of or damages related to a busted deal:  "Should the parties fail to enter into the required Definitive Agreements that are consistent with terms contained herein then DSWS

---

[2] The Statement of Facts is drawn from the MOU, ECF No. 15-1.

[3] Section 4(a) provides that "DSWS obligations under this MOU will be subject to its satisfactory due diligence of GAD's legal, financial, commercial and operational condition." The other related agreements would consist of operating agreements by which to order the parties' collaborative affairs.

shall reimburse GAD for its share of out of pocket expenses that GAD paid in connection with this transaction from the effective date of this MOU." *Id*. (at page 4 of 8).

      Plaintiff has not and cannot allege the parties entered into Definitive Agreements at any time, much less by the sunset date-certain in Section 8.  Plaintiff 's Amended Complaint makes no mention of the September 30, 2018 deadline for execution of Definitive Agreements, and does not quote the actual language of Section 8 with its lapse date.  Instead the Amended Complaint at ¶ 14 simply (and misleadingly) alleges:  "The MOU states specifically that it is the intent of DSWS and GAD that the parties be bound by the provisions of the MOU"—lopping off the critical temporal limitation agreed to by the parties.  Plaintiff therefore has not and cannot allege that DSWS and GAD performed the terms of the MOU so as to create a complete and clear binding contract by September 30, 2018.  Nor has Plaintiff alleged facts that establish the parties entered into Definitive Agreements at a later date, much less that DSWS substantially performed its contractual obligations and that GAD breached its contractual obligations—all necessary elements to state a cause of action for breach of contract.  This holds true for any contractual remedy, whether sought in the form of compensatory damages (Count 1) or specific performance (Counts 2 and 3).

      Plaintiff's Amended Complaint is bereft of any factual pleading of an enforceable agreement between the parties that survived the September 30, 2018 deadline.  Plaintiff has not pled such facts and cannot plead such facts without violating Rule 11.  The sole basis upon which Plaintiff alleges a binding contract is the MOU dated July 12, 2018, and that agreement expired on its own terms more than three years ago.

## ARGUMENT

### A. Legal standards

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations which, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). These allegations must rise to a level beyond "labels and conclusions" and must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant." *Paleja v. KP NY Operations LLC*, 2021 WL 148948 at *1 (S.D.N.Y. Jan. 15, 2021) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, "it need not credit 'mere conclusory statements[,]'. . . [n]or need it credit factual allegations that are 'contradicted by more specific allegations' or by 'documentary evidence' submitted with the complaint." *Gas Natural, Inc. v. Iberdrola, S.A.*, 33 F. Supp. 3d 373, 377 (S.D.N.Y. 2014) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

**B. By its terms the MOU expired on September 30, 2018 foreclosing any contractual enforcement past that express expiration date.**

As an initial matter, under New York law,[4] "[a] contract is to be construed in accordance with the parties' intent, which is generally discerned from the four corners of the document itself. Consequently, 'a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms[.]'" *IDT Corp. v. Tyco Group, S.A.R.L.*, 13 N.Y.3d 209, 214 (2009) (quoting *MHR Capital Partners LP v. Presstek, Inc*., 12 N.Y.3d 640, 645 (2009) (quoting *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 (2002)). And, as a federal court charged with evaluating a written agreement under New York law, this Court's "primary objective is to give effect to the intent of the parties as revealed by the language they chose to use." *Seiden Associates, Inc. v. ANC Holdings, Inc*., 959 F.2d 425, 428 (2d Cir. 1992) (quoting *Slatt v. Slatt*, 64 N.Y.2d 966, 967 (1985); *see also Cohen v. Lehman Brothers Bank, FSB*, 273 F. Supp. 2d 524, 528 (S.D.N.Y. 2003) (quoting *Phansalkar v. Andersen Weinroth & Co, L.P*., 2001 WL 1524479 at *25 (S.D.N.Y. Nov. 29, 2001) (stating that when determining whether the parties have entered a fully binding preliminary agreement, "[g]enerally, courts look solely at objective signs of intent, and do not consider subjective evidence of intent."), *aff'd in part and rev'd in part,* 344 F.3d 184 (2d Cir. 2003); *Cohen*, 273 F. Supp. 2d at 528 ("[I]f the language of the agreement is clear that the parties did not intend to be bound, the Court need look no further.") (citing *Arcadian Phosphates, Inc. v. Arcadian Corp*., 884 F.2d 69 (2d Cir. 1989) (the language of an agreement is "the most important" factor).

---

[4] Paragraph 7 of the MOU (ECF 15-1 at p. 4) entitled "Governing Law and Jurisdiction," states that "[t]he parties agree that any disputes that cannot be solved by good faith negotiations between the Parties must be brought in New York, New York." Despite the fact that the MOU expired by its own terms, the application of New York law appears appropriate given the expression of the parties' intent at one time.

Because the MOU expired without Definitive Agreements in place, the MOU's terms became unenforceable after September 30, 2018. This includes all of the substantive provisions as to which Plaintiffs seek damages and specific enforcement. Because the 79-day period of a binding agreement had long expired before Defendants' acts and omissions allegedly breached the MOU, no breach can be established as a matter of law.

New York courts give effect to MOU deadlines and find no liability attaches in analogous circumstances. For example, in *Decristofaro v. Nest Seekers East End, LLC*, 54 Misc.3d 1209(A), 52 N.Y.S.3d 246 (Table), 2017 WL 350803 at *2, 2017 NY Slip Op. 50074(U) (Sup. Ct., Suffolk County January 11, 2017), the court addressed a Letter of Intent that provided for the execution of an "operating partnership agreement" before May 16, 2011. The court observed that "It [was] undisputed that no 'operating partnership agreement' was executed by the parties either before the May 16, 2011, deadline or afterward." 2017 WL 350803 at *2. The court further stated that, "[a]ccordingly, there can be no liability for the failure to enter into an 'operating partnership agreement' before May 16, 2011" and "[a]fter May 16, 2011, the parties were no longer under a duty to negotiate in good faith." *Id*. at *9.[5] Likewise parties can expressly make the MOU binding even if they do *not* agree to a more formal agreement. See *Hoffman v. Hartford Fin. Servs. Grp., Inc.*, Case No.: 18-cv-02471-JLB, 2019 WL 2524940 at *3 (S.D. Cal. June 19, 2019) ("The last line of the MOU states that the parties 'agree that this settlement . . . is binding.' . . . The

---

[5] In the very different factual setting where the MOU does not have an express expiration date, courts may recognize a duty to keep negotiating in good faith that may be enforceable by specific performance. *See A.J. Richard & Sons, Inc. v. Forest City Ratner Cos.*, *LLC,* 2019 WL 356551, at *11, 2019 N.Y. Slip Op. 30215 (U), (N.Y. Sup. Ct.  Jan. 29, 2019) (citing *Brown v. Cara*, 420 F.3d 148 (2d Cir. 2005) and collecting district court decisions).  No such enforceable preliminary agreement exists here.

MOU further states that if the parties cannot reach mutual consent as to a long-form agreement, the MOU 'controls and is enforceable.'"). Thus, parties are free to order their affairs and expressly provide for the MOU to expire if no formal agreements are reached, or to be the enforceable expression even if no more formal agreement is mutually agreed upon. The right to limit the life of the MOU is absolute. *See Gibbs & Soell, Inc. v. Armstrong World Industries, Inc.*, No. 04 Civ. 5103 (HB), 2005 WL 615688 at *3 (S.D.N.Y. Mar. 17, 2005) ("The right to limit the life of a contract through a notice provision 'is absolute and will be upheld in accordance with its clear and unambiguous terms.'") (quoting *Red Apple Child Dev. Ctr. v. Cmty. Schs. Dist. Two*, 756 N.Y.S.2d 527, 529 (1st Dept. 2003)).

Where, as here, the MOU unambiguously states that it is binding only until September 30, 2018 or the execution of Definitive Agreements—whichever occurs earlier— the MOU language controls and renders the MOU expired and without force and effect because no Definitive Agreements were executed by the express deadline agreed to by the parties.[6]

When September 30, 2018 came and went with no Definitive Agreements in place, the MOU lapsed by its own terms and there was no contractual basis to continue negotiating. The parties expressly cabined the binding nature of the MOU to the period running from the execution of the MOU on July 12, 2018 to the latest possible date of September 30, 2018.

---

[6] The fact that the parties expressly agreed that GAD would be reimbursed by Plaintiff for certain legal costs if Definitive Agreements were not executed (MOU page 4 of 8) further demonstrates the parties' express intention to kill the underlying deal absent Definitive Agreements. *See Zohar v. 3 West 16th*, 52 A.D.3d 208, 209 (1st Dept. 2008) ("the inclusion of a term stating that in the event that the formal contract is not signed, defendant seller agrees to pay [plaintiff's] broker's fee within the time frame for signing the formal contract, establishes that the parties intended to leave themselves the option of not going forward with the deal") (citing *Brause v Goldman*, 10 A.D.2d 328, 332-333 (1st Dept. 1960), *aff'd* 9 N.Y.2d 620 (1961)).

The parties necessarily did not agree to be bound after September 30, 2018 unless the Definitive Agreements were executed by that time. That is the plain, unambiguous meaning of Section 8 of the MOU.

### C. Specific performance is not available for preliminary agreements even if the MOU had not expired on its own terms.

To begin with, plaintiff bears the burden of proof to establish entitlement to specific performance. *Pesa v. Yoma,* 18 N.Y.S.3d 527, 532 (2012). Plaintiff must sufficiently demonstrate that "(1) there is a valid contract; (2) the plaintiff has substantially performed its part of the contract; and (3) the parties are each able to continue performing their parts of the agreement." *Netherby Limited v. Jones Apparel Group, Inc*., 04 Civ. 7028 (GEL), 2007 WL 1041648 at *19 (S.D.N.Y. Apr. 5, 2007) (applying New York law) (citing *Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp*., 992 F.2d 430, 433 (2d Cir. 1993)). Moreover, specific performance is an extraordinary remedy that is limited in application and not available when material terms are uncertain or left open for future agreement. *See Gulbenkian v. Gulbenkian*, 147 F.2d 173, 175 (2d Cir. 1945) ) ("It is well settled that for the granting of specific performance the contract must be sufficiently certain in its terms to permit the decree to state with some exactness what the defendant must do.") (applying New York law) (citing Williston, Contracts, Rev.Ed. § 1424); *See generally Joseph Martin, Jr., Delicatessen v. Schumacher*, 52 N.Y.2d 105, 109-110 (N.Y. 1981) ("it is rightfully well settled in the common law of contracts in this State that a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable . . . . The rule applies all the more, and not the less, when, as here, the extraordinary remedy of specific performance is sought.")

(citing 11 Williston, Contracts [Jaeger 3d ed], § 1424 and Pomeroy, Equity Jurisprudence, § 1405)).[7]

The Amended Complaint fails to include any pleading of facts necessary to show entitlement to specific performance. No valid contract exists under the MOU's plain terms. And the requirements that Plaintiff has substantially performed its part of the contract and both parties are each able to continue performing the contract are patently unsatisfied because, among other things, the contemplated corporation was never formed. The parties expressly contemplated the formation of "GAD Spirits, LLC," a limited liability company to be incorporated under the laws of Florida. MOU § 4 (pages 2-3 of 8). Both parties were to take equal equity positions in the new company, and the MOU contained a provision for redeeming shares in it. *Id*. Because the new entity was never created (for lack of Definitive Agreements by the sunset date), Plaintiff has not and cannot allege facts that show an enforceable contract exists much less one capable of being specifically performed years later. The court cannot possibly effectuate by specific performance or otherwise the terms sought by Plaintiff in Count II with respect to the non-existent GAD Spirits, LLC:

- "enforcing the conversion of DSWS's investment into equity… resulting in a 26.7% ownership of GAD Spirits";
- "requiring GAD to accept $350,000 for an additional 23.4% interest in GAD Spirits";
- "requiring GAD to provide proof to Live Brands that it has the right to redeem the membership interest of the existing investors of GAD in GAD Spirits"; and

---

[7] 4 POMEROY, Equity Jurisprudence, § 1405b, at 1048 provides: "Although the contract is valid, and the defendant is able to do what he has undertaken to do, if, through the want of appropriate means and instrumentalities, the court is unable, while pursuing its ordinary modes of administering justice, either to render a decree or to enforce the decree when made, then the remedy will be refused."

-9-

- "requiring GAD to provide proof that the GAD shareholders contributed 100% of their shares in GAD to GAD Spirits in exchange for a direct or indirect ownership interest in GAD Spirits."

Amended Complaint at 7 (Count II "Wherefore" clause).  Each step to be compelled is impossible to accomplish given the non-existence of GAD Spirits LLC.

Likewise, specific performance is unavailable under Count III, which seeks to order GAD shareholders to transfer their non-existent shares in the non-existent company to Plaintiff.  *Id.* at 8.  Because GAD Spirits, LLC never existed, plaintiff has not and cannot allege the parties performed the required steps for the stock transfers, and has not and cannot plead that it is ready, willing and able to perform its contractual obligations with respect to the formation and transfer of equity interests in GAD Spirits, LLC, all necessary prerequisites for specific performance.

The Second Circuit in *Gulbenkian* held that specific performance was not available to enforce an agreement to reorganize a corporation where the terms were incomplete, lacking "exactness [as to] what the defendant must do." 147 F.2d at 175.  New York courts likewise have denied specific performance pertaining to contracts to form a corporation out of concern for drawing the court into matters beyond those clearly agreed upon by the parties.  *See Rudiger v. Coleman*, 199 N.Y. 342, 346 (1910) ("The agreement between the parties cannot be specifically enforced in equity because it embraces a covenant to form a corporation which can never be formed unless the parties unite upon a number of details which are not specified in the agreement. "); *Perrin v. Smith*, 135 A.D. 127, 131, 119 N.Y.S. 990 (1st Dept. 1909) (rejecting application of specific performance regarding stock transfers in a "non-existent corporation":  "How can a court compel a non-existent corporation to issue and distribute non-existent stock in a specified manner?").  The rhetorical question posed in

*Perrin* has equal application here, and is equally un-answerable in connection with the non-existent GAD Spirits LLC.[8]

Because GAD Spirits LLC was never formed, various and specific necessary conditions precedent to performance of the parties' equity investments and transfers never occurred. This leaves the court without any contractual basis, much less sufficiently certain terms, on which to order specific performance.

### D. The three shareholders who did not sign the MOU were never bound by it.

Defendant Xaime Niembro Alvarez signed the MOU. Defendants Pablo Lopez Vargas, Jose Enrique Jimenez Barcenas, and Oscar Hernandez Santiago—the three other shareholders in GAD—did not. Accordingly, even if the MOU were enforceable (it is not) it could not be enforced against these three non-signatories. *See Kamdem-Ouaffo v. Pepsico, Inc.*, No. 14-CV-227 (KMK), 2015 WL 1011816, at *7 (S.D.N.Y. Mar. 9, 2015) ("It is hornbook law that an entity must be a party to a contract for a claim of breach of that contract to lie, unless the entity has assumed or been assigned the contract.") (citing *La Barte v. Seneca Res. Corp.,* 285 A.D.2d 974, 975 (4th Dept. 2001)). Thus, a plaintiff "may not maintain a cause of action for breach of contract against those parties with whom [it] [was] not in privity." *La Barte*, 285 A.D.2d at 975.

---

[8] In the case of existing corporations, in contrast, "New York courts routinely award specific performance in cases involving the conveyance of stock in privately held corporations." *Vacold LLC v. Cerami*, 545 F.3d 114, 130 (2d Cir. 2008).

## CONCLUSION

For each of the foregoing reasons Defendants GAD and its shareholders respectfully request that the court dismiss the Amended Complaint in its entirety with prejudice.

DATED:  April 15, 2022

                                Respectfully submitted,

                                LAW OFFICE OF DAVID TENNANT PLLC

                                <u>s/ David H. Tennant</u>
                                David H. Tennant
                                3349 Monroe Avenue, Suite 345
                                Rochester, NY 14618
                                585-281-6682
                                david.tennant@appellatezealot.com