UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
LIVE BRANDS HOLDINGS, LLC,                                              :
                                                                        :
                                    Plaintiff,                          :
                                                                        :                    20 Civ. 1213 (JPC)
                -v-                                                      :
                                                                        :                    OPINION AND ORDER
GASTRONOMICO GRACIAS A DIOS, SOCIEDAD                                   :
RESPONSABILIDAD LIMITADA DE CAPITAL                                     :
VARIABLE, *et al.*,                                                     :
                                                                        :
                                    Defendants.                         :
                                                                        :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Plaintiff Live Brands Holdings, LLC ("Live Brands") brings this breach of contract action against Defendant Gastronomico Gracias a Dios, Sociedad Responsabilidad Limitada de Capital Variable ("GAD"), as well as GAD's four shareholders, Defendants Xiame Niembro Alvarez, Pablo Lopez Vargas, Jose Enrique Jimenez Barcenas, and Oscar Hernandez Santiago (collectively the "Individual Defendants"), alleging breach of a Memorandum of Understanding ("MOU") and seeking monetary damages and specific performance. Defendants have moved to dismiss, arguing that the MOU cannot be enforced because it was a preliminary agreement that expired on September 30, 2018. Because the Court determines that the MOU was a binding agreement but that its language is ambiguous as to whether all or which of its terms had to be satisfied prior to its expiration, the Court denies Defendants' motion to dismiss Count I. Counts II and III plead only specific performance, which is a remedy and not a cause of action. The Court therefore dismisses Counts II and III without determining whether Live Brands may be entitled to specific performance should it prevail on its breach of contract claim in Count I. The dismissal, however, is without

prejudice to Live Brands filing an amended complaint in the event it is able to plead a breach of contract claim against the Individual Defendants.

## I. Background[1]

### A.  Factual Background and Procedural History

Live Brands is a Florida limited liability company and the successor-in-interest to Domaine Select Wine and Spirits, LLC ("DSWS"), a Delaware limited liability company. Am. Compl. ¶¶ 1, 21. At the time of the MOU, DSWS was in the business of wine and spirit importation and distribution. *Id.*, Exh. 1 ("MOU") at 1. GAD, a Mexican corporation, produces and owns registered trademark rights in "Mezcal brand alcoholic spirits." Am. Compl. ¶¶ 3, 11. The Individual Defendants are Mexican citizens and shareholders of GAD. *Id.* ¶¶ 4-7, 29.

In July 2018, DSWS and GAD entered into the MOU. *Id.* ¶ 12; MOU at 1. The terms of that MOU are discussed in detail *infra* at section I.B. At some unspecified date, DSWS provided GAD $285,000 for the construction and expansion of GAD's production facilities in Oaxaca, Mexico, pursuant to the MOU. *Id.* ¶ 17. DSWS additionally provided $115,000 for use as general working capital. *Id.* ¶ 18. The MOU required DSWS to provide an additional $350,000 if GAD met certain conditions. *Id.* ¶ 19. Although GAD did not satisfy those conditions, DSWS still attempted to provide the remaining $350,000, but GAD refused to accept those funds. *Id.* ¶ 20.

Live Brands alleges that "GAD breached the MOU" by (1) "[f]ailing to provide proof to DSWS or Live Brands that GAD has ownership, free and clear of liens, of the fixed assets used in

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Amended Complaint. Dkt. 15 ("Am. Compl."); *see also Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiffs' favor").

the production of the distilled spirits produced by GAD"; (2) "[f]ailing to provide proof to DSWS or Live Brands that [GAD] has the right to redeem the membership interests of the existing investors of GAD in GAD Spirits upon DSWS paying the remaining $350,000 due under the MOU"; (3) "[f]ailing to provide proof to DSWS or Live Brands that GAD achieved specified operating targets, as specified in Exhibit C to the MOU"; (4) "[f]ailing to provide proof to DSWS or Live Brands that GAD has the right to use the land where GAD operates for 30 to 50 years without expenses"; (5) "[f]ailing to provide proof to DSWS or Live Brands that the GAD shareholders contributed 100% of their shares in GAD to GAD Spirits in exchange for a direct or indirect 50% ownership interest in GAD Spirits"; (6) "[f]ailing to provide DSWS or Live Brands a 26.67% ownership interest in GAD Spirits for its proportional funding of the amounts set forth in the MOU"; (7) "granting distribution rights to one or more third parties for spirits produced by GAD, which violates Plaintiff's rights under the MOU to be the exclusive GAD importer for the United States, including granting the right to handle all marketing and promotional activities in the United States"; and (8) "[n]ot acting in good faith and violating the implied covenant of good faith and fair dealing by refusing to comply with the conditions precedent for funding the $350,000 and then refusing to accept the $350,000 when tendered by DSWS." *Id* ¶ 22(a)-(h). Only the fifth of these breaches—the alleged failure to confirm that the GAD shareholders contributed 100% of their shares in GAD to GAD Spirits in exchange for a direct or indirect 50% ownership interest in GAD Spirits—appears to be alleged as to the Individual Defendants. *See id.* ¶¶ 22(e), 30.

Live Brands commenced this action on February 11, 2020. Dkt. 1. It filed the Amended Complaint on February 18, 2020, pleading three Counts, all arising from the alleged breach of the MOU. Am. Compl. ¶¶ 24-31. Count I pleads breach of contract against GAD and seeks compensatory monetary damages for that breach, *id.* ¶ 25, Count II seeks specific performance by

GAD for its breach of the MOU, *id.* ¶ 27, and Count III seeks specific performance from the Individual Defendants for their failure to confirm that they have contributed 100% of shares in GAD to GAD Spirits in exchange for a direct or indirect ownership interest in GAD Spirits, *id.* ¶¶ 30-31.[2]  After long delays, Live Brands effected service via publication in January 2022.  Dkt. 47.  Defendants then appeared in February 2022, Dkt. 48, and moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on April 15, 2022, Dkts. 56, 57 ("Defts. Mem.").

**B.      The Terms of the MOU**

The MOU was executed on July 12, 2018 between DSWS and GAD, as well as the "GAD Shareholders listed on Schedule D."[3]  MOU at 1.  The parties "desire[d] to combine their respective expertise and relationships to build the GAD Brands currently produced by GAD" and "intend[ed] to develop and launch new brands that GAD and DSWS might produce together for global distribution."  *Id.*

Under the MOU, DSWS and GAD each had a "Role and Responsibility."  *Id.* §§ 2, 3.  As to DSWS, the MOU provides that DSWS (1) "shall be granted exclusive global distribution rights to the spirits produced by GAD," (2) "shall be appointed by GAD as exclusive importer for the United States market," (3) "shall also handle all marketing and promotional activities in the United States," and (4) "shall collaborate with GAD on marketing and promotional activities inside the

---

[2] While Live Brands alleges that the Individual Defendants breached the MOU by "failing to provide proof" that they contributed their GAD shares to GAD Spirits, it seeks the actual contribution of those shares via specific performance.  Am. Compl. ¶¶ 22(e), 31.

[3] Live Brands did not attach Schedule D to the Amended Complaint, but has alleged that the Individual Defendants are "the four shareholders of GAD."  Am. Compl. ¶ 29.  The text of the MOU, which is attached to the Amended Complaint, also indicates that there would be four such investors.  MOU § 4(b).  The Court therefore construes the Amended Complaint as alleging that the Individual Defendants are the shareholders listed on Schedule D of the MOU.

United States as well as other international markets." *Id.* § 2.  With respect to GAD, the MOU provides that GAD (1) "shall continue to be engaged in the production of Mezcal" under its current brand and to explore other brands for development or acquisition and (2) "shall collaborate with DSWS on marketing and promotional activities inside the United States as well as other international markets." *Id.* § 3.  GAD's "Role and Responsibility" also included certain responsibilities of the GAD Shareholders: the GAD Shareholders (1) "agree to carry out all actions necessary to cause GAD to meet its roles as stated herein," (2) would cause two third-party companies "to enter into agreement for the sale of agave to GAD," and (3) would ensure that GAD had ownership of the assets it used to produce its spirits, as well as the right to use the land it used at the time the MOU was executed for between thirty and fifty years "at no expense." *Id.*

The MOU also lays out a timeline for DSWS to invest into "GAD Spirits, LLC." *Id.* § 4(a). In total, DSWS was to invest $750,000.00 into that company. *Id.*  DSWS was required to release the first $285,000 pursuant to "the schedule attached hereto as Exhibit A for construction of expanded facilities" at one of GAD's plants. *Id.* § 4(a), Exh. A.  That construction schedule was itself set out in Exhibit B. *Id.* § 4(a), Exh. B.  The next $115,000 of the investment was for "general working capital purposes," including costs "associated with proposed development and fees incurred in connection with this transaction," with the timing of this investment also governed by Exhibit A. *Id.* § 4(a).  While not clear, it appears that Exhibit A provides that this total $400,000 was to be distributed in monthly segments: $100,000 in June 2018, $80,000 in July 2018, $70,000 in August 2018, $80,000 in September 2018, and $70,000 in October 2018. *Id.*, Exh. A.

The remaining $350,000 of DSWS's investment was to be available "to redeem the membership interests owned by existing investors of GAD in GAD Spirits" based on a schedule governed by operating targets set out in Exhibit C. *Id.* § 4(a), Exh. C.  Exhibit C appears to provide

5

for a $200,000 investment in January 2019 and an additional $150,000 investment in January 2020, though this Exhibit also is not pellucid. *Id.*, Exh. C. DSWS's investment was also "predicated on GAD having ownership" of the fixed assets used in the production of its spirits and of land-use rights, *id.* § 4(a), which are described as part of GAD's "Role and Responsibility" in section 3, *id.* § 3. The MOU provides that "[t]he exact form" to memorialize the investment structure "shall be determined by counsel for DSWS in consultation with GAD's counsel," and "DSWS's obligations under this MOU will be subject to its satisfactory due diligence of GAD's legal, financial, commercial and operational condition." *Id.* The MOU also states that GAD Shareholders "shall contribute 100% of their shares to GAD Spirits, in exchange for a direct or indirect 50% ownership interest in GAD Spirits." *Id.* § 4(b).

The parties were to split the appointment of directors to the GAD Spirits board of directors: "DSWS shall appoint two (2) Directors to the GAD Spirits Board of Directors and GAD shall have the right to appoint (2) Directors." *Id.* § 5. The parties would then agree on an additional independent director. *Id.* DSWS was also to incorporate corporate governance provisions in "an Operating Agreement [that] shall govern the relationship between the parties." *Id.* § 6. While "Operating Agreement" is a capitalized in the MOU, it is nowhere defined in the document.

Additionally, the MOU provides that "[t]he terms of this Memorandum of Understanding shall be incorporated into Definitive Agreements and executed by the Parties" with the costs of that legal work paid by GAD. *Id.* at 4. These "Definitive Agreements" are also nowhere defined in the MOU. If the parties "fail to enter into the required Definitive Agreements that are consistent with the terms" of the MOU, DSWS "shall reimburse GAD for its share of out of pocket expenses that GAD paid in connection with this transaction from the effective date of this MOU." *Id.*

Significantly, the MOU states that "it is the intent of the Parties to be bound by the

provisions of the MOU, subject to the last sentence of Section 4(a)[4] until the earlier of September 30, 2018 or the date of the execution of Definitive Agreements and other related agreements." *Id.* § 8 (the "Expiry Clause").

## II.  Standard of Review

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009) (citation omitted).

## III.  Discussion

### A.   Breach of Contract

#### 1.      The Ability to Sue for Past Breach of an Expired Contract

Defendants first argue that "because the MOU expired without Definitive Agreements in place, the MOU's terms became unenforceable after September 30, 2018" due to the Expiry Clause.  Defts. Mem. at 6.  This argument is not persuasive.  A cause of action for breach of

---

[4] That sentence reads: "DSWS's obligations under this MOU will be subject to its satisfactory due diligence of GAD's legal, financial, commercial and operational condition." MOU § 4(a).

contract accrues at the time the breach occurs.  *See, e.g.*, *Ely-Cruikshank Co. v. Bank of Montreal*, 615 N.E.2d 985, 986 (N.Y. 1993) ("In New York, a breach of contract cause of action accrues at the time of the breach.").  The salient question is not whether the parties remain bound by the terms of the contract at the time of litigation, but whether they were bound by the contract at the time of the alleged breach.  *Cf. Jordan v. Can You Imagine, Inc.*, 485 F. Supp. 2d 493, 498 (S.D.N.Y. 2007) ("When one party materially breaches an agreement, the nonbreaching party may terminate that agreement and sue for total breach.").[5]

### 2.    The Obligations Under the MOU

Defendants' argument may be more properly reframed as contending that dismissal is warranted because the MOU was never a binding agreement.  This argument too fails.

"Under New York law, the initial interpretation of a contract 'is a matter of law for the court to decide.'"  *K. Bell & Assocs. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996) (quoting *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 299 (2d Cir. 1996)).  A court must first determine if a contractual provision is ambiguous.  *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 616 (2d Cir. 2001).  "No ambiguity exists, however, when contract language has 'a definite and precise meaning, unattended by danger of misconception in the purport of the

---

[5] In support of their claim that the MOU became unenforceable on September 30, 2018, Defendants cite *DeCristofaro v. Nest Seekers East End, LLC*, No. 35876-11, 2017 WL 350803 (N.Y. Sup. Ct. Jan. 11, 2017).  Defts. Mem. at 6.  There, the court construed a contract that provided that "the parties shall make best efforts to convert this agreement into an operating partnership agreement" which "must be signed and agreed to by May 16th 2011."  *DeCristofaro*, 2017 WL 350803, at *2.  The court held that this agreement only required the parties to negotiate in good faith to reach the partnership agreement until May 16, 2011 and did not itself create the partnership agreement.  *Id.* at *9.  While the court in *DeCristofaro* determined, as Defendants state, that the defendant there could not be liable for failing to enter into the partnership agreement before that date, that determination was based on the fact that neither party attempted to negotiate the agreement and so the plaintiff's ability to recover was barred by the doctrine of *in pari delicto*.  *Id.* And crucially, because the only issue before the court was whether a partnership had been created, the court did not address other alleged breaches of contract.  *Id.*

[contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Planète Bleue Télévision, Inc. v. A&E Television Networks, LLC*, No. 16 Civ. 9317 (PGG), 2018 WL 10579873, at *8 (S.D.N.Y. Sept. 19, 2018) (alteration in original) (quoting *Breed v. Ins. Co. of N. Am.*, 385 N.E.2d 1280, 1282 (N.Y. 1978)).

"Where 'the parties' intent is unambiguously conveyed by the plain meaning of the agreements, . . . interpretation is a matter of law.'" *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 13 (2d Cir. 2019) (alteration in original) (quoting *Crane Co. v. Coltec Indus., Inc.*, 171 F.3d 733, 737 (2d Cir. 1999)). "At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Id.* (quoting *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016)). When interpreting a contract, a court must consider "the provisions of the contract as a whole," and cannot "view sentences or clauses in isolation." *Int'l Klafter Co. v. Cont'l Cas. Co.*, 869 F.2d 96, 99 (2d Cir. 1989). "[T]he entire contract must be considered, and all parts of it reconciled, if possible, in order to avoid an inconsistency," *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000), and to avoid "adopting an interpretation that would render any individual provision superfluous,'" *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010) (quoting *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002)).

Here, the text of the MOU unambiguously states that the agreement was binding for at least some period of time.[6] The Expiry Clause reads, "*it is the intent of the Parties to be bound* by the provisions of the MOU, subject to the last sentence of Section 4(a) until the earlier of September 30, 2018 or the date of the execution of Definitive Agreements and other related agreements."

---

[6] Defendants admit that "the MOU was binding in certain respects during its term" but do not further elaborate what these "certain respects" were. Defts. Mem. at 2.

MOU § 8 (emphasis added).  This language is similar to that analyzed by the court in *Hajdu Nemeth v. Zachariou,* 765 N.Y.S.2d 597 (App. Div. 2003).  There the court determined that a letter of intent that provided that it "constitutes a binding contract until such time as the definitive agreements referenced therein are executed" was a binding agreement on which plaintiff could sue for breach.  *Id* at 597 (brackets omitted).  The MOU is similarly binding.

However, the MOU's text is ambiguous as to certain key provisions that concern the temporal scope of its obligations.  Considered as a whole, the contract is not clear as to whether all, or any specific one, of its terms had to be completed prior to the expiration of the MOU on September 30, 2018.  At first glance, certain contractual language does appear clear.  As examples, section 4(b) of the MOU states that "[t]he GAD Shareholders shall contribute 100% of their shares to GAD Spirits," MOU § 4(b), and section 5 states that "DSWS shall appoint two (2) Directors to the GAD Spirits Board of Directors and GAD shall have the right to appoint two (2) Directors," *id.* § 5.  One reasonable interpretation of these provisions, in conjunction with the MOU's expiration on September 30, 2018, is that the GAD Shareholders had to contribute their shares, and the parties had to appoint their directors, prior to September 30, 2018.

But other provisions of the MOU cast doubt on such a reading.  Section 4(a) states that DSWS "shall invest $750,000.00 into GAD Spirits, LLC" pursuant to funding schedules set out in Exhibits A, B, and C.  *Id.* § 4(a).  And Exhibits B and C, while both unclear as to exactly when any particular action needed to be taken, seem to contemplate the parties fulfilling some obligations *after* the expiry of the MOU on September 30, 2018.  *Id.*, Exhs. B, C.  Exhibit B is titled "Activities Calendar 2018" and contains a list of "activities" such as "New Oven Construction" and "Local Authorities Construction Permits."  *Id.*, Exh. B.  Next to this list is a calendar which seems to indicate the dates when these listed activities should be conducted or

when funds associated with the activities should be expended, using blue and white squares.  *Id.*
Setting aside that the Court cannot determine, and the parties have not indicated, the significance
of this color scheme—such as whether perhaps the blue squares or the white squares indicate
deadlines by when the "activities" must occur—the calendar stretches into December 2018, with
both blue and white squares also extending to that month.  *Id.*  It therefore seems that the MOU
may have contemplated the required "activities" occurring through the end of 2018, *i.e.*, after the
September 30, 2018 date in the Expiry Clause.  Similarly, Exhibit C, which is titled "Funding
Schedule Targets" and "Grupo Gastronomico Gracias a Dios DSWS Investment Schedule,"
appears to reflect that some of this investment would take place in January 2019 and January 2020.
*Id.*, Exh. C.

Additionally, the MOU states that the "terms of this Memorandum of Understanding shall
be incorporated into Definitive Agreements and executed by the Parties."  *Id.* at 4.  But it also
contemplates that this obligation might not be satisfied by September 30, 2018.  The Expiry Clause
states that the MOU will bind the parties "until the earlier of September 30, 2018 or the date of the
execution of Definitive Agreements and other related agreements" *id.* § 8, while a paragraph placed
after section 9 states that "[s]hould the parties fail to enter into the required Definitive Agreements
that are consistent with the terms contained herein then DSWS shall reimburse GAD," *id.* at 4.
Just like the apparent timelines set out in Exhibits B and C, these provisions cast doubt on the idea
that all of the obligations imposed by the MOU had to be completed prior to September 30, 2018.
Instead, a contrary interpretation of the contract is that at least some of the MOU's provisions
would have imposed obligations on the parties only once, and if, these "Definitive Agreements"
were entered into.

Because the terms of the contract are subject to these reasonable differing interpretations,

the Court determines that the MOU is ambiguous such that Live Brands's breach of contract claims cannot be resolved on a Rule 12(b)(6) motion to dismiss.  Therefore, the Court denies Defendants' motion to dismiss Count I.

### B.     Specific Performance

Counts II and III plead only requests for specific performance.  Am. Compl. ¶¶ 26-31. Defendants also argue that specific performance is not available in this case for two reasons.  First, Defendants argue again that the MOU was not a binding contract.  Defts. Mem. at 9.  Second, Defendants argues that "the parties expressly contemplated the formation of 'GAD Spirits, LLC'" and that this entity was never created, making it impossible for obligations related to that entity to be performed.  *Id.*

Defendants' arguments as to the availability of specific performance as relief are best left for a later stage of this litigation.  "[I]t is well-settled that specific performance is not a separate cause of action, but rather 'an equitable remedy for a breach of contract.'"  *CAI Rail, Inc. v. Badger Mining Corp.*, No. 20 Civ. 4644 (JPC), 2021 WL 705880, at *11 (S.D.N.Y. Feb. 22, 2021) (quoting *Cho v. 401-403 57th St. Realty Corp.*, 752 N.Y.S.2d 55, 57 (App. Div. 2002)).  Courts in this District "typically dismiss stand-alone specific performance claims but permit, without prejudice, plaintiff to seek specific performance as a remedy for the breached contract." *Camelot SI, LLC v. ThreeSixty Brands Group LLC*, No. 21 Civ. 8232 (ER), 2022 WL 4628757, at *12 (S.D.N.Y. Sept. 30, 2022) (collecting cases).  Therefore, the Court dismisses Counts II and III.  However, given that Live Brands's breach of contract claim survives, the Court declines to determine at this stage the appropriate remedy for that claim were Live Brands to prevail.  *See Cicel (Beijing) Science & Tech. Co. v. Mixonix, Inc.*, No. 17 Civ. 1642 (ADS) (SIL), 2017 WL 4535933, at *5 (E.D.N.Y.

Oct. 7, 2017) (declining to determine at the motion to dismiss stage whether specific performance would be an appropriate remedy for breach of contract and collecting similar cases).

## C.      Leave to Amend

Lastly, the Court considers whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, a court "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Live Brands has asked the Court for leave to amend its Amended Complaint should the Court rule in Defendants' favor.  Dkt. 58 at 12 n.2.  Because Count I survives but is brought only against GAD, and because Count III, the only claim against the Individual Defendants, is dismissed as a stand-alone claim for specific performance, the Court will grant Live Brands leave to file a Second Amended Complaint to the extent that it wishes to bring a breach of contract claim against the Individual Defendants seeking specific performance or other relief.  The Court emphasizes that Live Brands should only file a Second Amended Complaint if it is able to plead a viable cause of action against the Individual Defendants.

## IV.  Conclusion

For the reasons stated above, Defendants' motion to dismiss is granted in part and denied in part.  Defendants' motion to dismiss Count I is denied.  Counts II and III are dismissed without prejudice to Live Brands's ability to seek specific performance as a remedy in this action.  The Court grants Live Brands leave to amend its Amended Complaint.  In the event Live Brands decides to file another amended complaint, it must file it within thirty days of this Opinion and Order.  The Clerk of Court is respectfully directed to close the motion pending at Docket Number 56, and to terminate Defendants Xiame Niembro Alvarez, Pablo Lopez Vargas, Jose Enrique Jimenez Barcenas, and Oscar Hernandez Santiago from this action.

SO ORDERED.

Dated: February 3, 2023
       New York, New York

JOHN P. CRONAN
United States District Judge

14