# LAW OFFICE OF DAVID TENNANT PLLC

3349 Monroe Avenue, Suite 345, Rochester, NY, 14618
585-281-6682
david.tennant@appellatezealot.com

February 15, 2023

Hon. John P. Cronan, USDJ
United States District Court
Southern District of New York
500 Pearl Street, Room 1320
New York, NY 10007

Re:   *Live Brand Holdings, LLC v. Gastronomico Gracias a Dios, Sociedad Responsabilidad, Limitadade Capital Variable, et al.*   1:20-cv-1213 (JPC) – Reconsideration

Dear Judge Cronan:

Defendant Grupo Gastronomico Gracias a Dios, Sociedad de Responsabilidad Limitada de Capital Variable ("GAD") and its four shareholders (collectively "Defendants") respectfully request the Court to reconsider its February 3, 2023 Opinion and Order. The basis for reconsideration is that the Court misapprehended the case it cited in finding a binding agreement, namely the First Department's decision in *Hajdu-Nemeth v. Zachariou*, 309 A.D.2d 697 (1st Dept.2003). *See* Opinion and Order at 10 ("The language is similar to that analyzed by the court in [*Hajdu-Nemeth*] . . . [t]he MOU is similarly binding."). Attached is the Letter of Intent at issue in *Hajdu-Nemeth*. Most significantly the Letter of Intent—unlike the MOU in question—specifically stated it was binding without reference to any expiration date. It had no "expiry clause." Instead, the parties stated without reservation:

> The Letter of Intent, once signed by both of us, is intended to constitute a binding agreement between us until such time as one or more separate, subsequently binding and definitive agreement still to be finalized by us . . . are in fact, completed and signed by all relevant parties.

\* \* \*

> **III Legal Binding Effect**
>
> This Letter of Intent constitutes a binding contract until such time as the definitive agreements referenced herein are executed; the parties shall be legally bound here once this Letter of Intent has been executed by the parties hereto.

Hon. John P. Cronan
February 15, 2023
Page 2

With no sunset provision—no date by which the definitive agreements had to be reached—the parties clearly intended to be bound without temporal restriction or any qualification whatsoever, *even if definitive agreements were never reached.* The court thus found the Letter of Intent was binding.

The decision in *Hajdu-Nemeth* thus does not support the Court's conclusion that the MOU was similarly binding. The Court's reliance on *Hajdu-Nemeth* is misplaced and the Court's analysis of the MOU effectively reads the "expiry clause" out of the MOU.

Accordingly, Defendants respectfully request the Court to reconsider its Opinion and Order and find the MOU expired by its own terms, leaving Live Brands to seek restitution of any amounts it is still owed.[1]

Respectfully submitted,

s/David H. Tennant

David H. Tennant
*Counsel for Defendants*

cc John Goldsmith, Esq.

The motion is denied. "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusions reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995). Defendants' mere disagreement with the Court's analysis of *Hajdu-Nemeth* does not satisfy this standard.

The Clerk of Court is respectfully directed to close the motion pending at Docket Number 75.

SO ORDERED.
Date: February 16, 2023
New York, New York

JOHN P. CRONAN
United States District Judge

---

[1] As the Court has been advised, Live Brands obtained a judgment for $250,000 in Mexico constituting the return of most of the monies advanced by Live Brands' predecessor.

**22**

**DRAFT**
**2/23/00**

LASZLO HAJDU NEMETH
5 9th Street
Somerset, New Jersey 08873

February _29_, 2000

Re: Letter of Intent Outlining Business Relations Between Newco and Businesses Controlled by Peter Zachariou.

Mr. Peter Zachariou
[address]

Dear Peter:

*[handwritten: Dick Entertainment Inc]*

      This letter of intent ("Letter of Intent") sets forth the terms and conditions of a consulting arrangement between a wholly-owned entity to be formed by me ("Newco") and each of Q East, Q West and ASD Group (collectively, "the "Companies") which are businesses owned in significant part and controlled by you.

      This Letter of Intent, once signed by both of us, is intended to constitute a binding agreement between us until such time as one or more separate, subsequently binding, and definitive agreements still to be finalized by us (or our affiliates) are, in fact, completed and signed by all relevant parties. Accordingly, the matters contained in this Letter of Intent are binding upon us (including the confidentiality provisions set forth in the next paragraph), and represent the intention of the parties to proceed to memorialize and consummate the business relationship on the terms and conditions set forth herein.

      The parties agree to keep strictly confidential the existence of this Letter of Intent, and the terms and conditions of the documents referenced herein, including, without limitation, the terms of the referenced consulting agreements Newco will have with the Companies (the "Consulting Agreements"). The parties further agree not to disclose the existence of this Letter of Intent, the terms hereof, or the existence or status of negotiations pursuant hereto, except as to those persons who have a need to know.

23

I. <u>Consulting Agreements</u>

Newco and each of the Companies shall enter into a Consulting Agreement. It is anticipated that the terms of each such Consulting Agreement will be essentially identical, except that the aggregate consulting fee described below will be split among the Companies in some mutually agreeable manner. The Consulting Agreements shall feature the following terms and conditions:

A. <u>Consulting Services and Consulting Fee</u>. Newco will be retained by each Company to provide (i) financial oversight, (ii) new investment due diligence and (iii) operational consulting services. Newco's role will be advisory only; it will report exclusively to you and to the board of directors or other similar management body of each Company. Each Consulting Agreement shall have a term of three (3) years, running from March _31_, 2000 until March _31_, 2003 and shall be subject to renewal at the conclusion of its initial three-year term, subject to the mutual agreement of the parties. For its services, Newco shall be paid an aggregate base consulting fee by the three Companies of $250,000 per year (payable in equal biweekly increments), with the base consulting fee in years two and three of each Consulting Agreement subject to upward adjustment pursuant to performance criteria upon which you and I will agree (see Part II, below).

B. <u>Early Termination and Guarantee</u>. The Consulting Agreements shall be subject to early termination by the Company upon delivery of thirty (30) days prior written notice to Newco, with or without cause, provided, however, that early termination by any Company without cause will require (in addition to payment of any earned but unpaid base consulting fee due and payable at such time) the lump sum payment of a severance fee to Newco equal to all amounts that remain payable under the subject Consulting Agreement to Newco from the date of termination through the end of the original term of the relevant Consulting Agreement(s). Termination of one or more Consulting Agreements for cause shall not give rise to a severance fee payment obligation on the part of the subject Company. "Cause" for these purposes shall be limited to conviction of a felony, chronic substance abuse, and/or willful misconduct by Newco or me. Newco shall be entitled to voluntarily terminate any Consulting Agreement prior to its term by delivery of thirty (30) days prior written notice to the subject Company. Voluntary termination of any Consulting Agreement by Newco will not give rise to any severance fee payment obligation on the part of the subject Company. You will personally guarantee the payment obligations of each of the Companies under the Consulting Agreements.

C. <u>Expense Reimbursement</u>. In addition to the aggregate base consulting fee payable to Newco, one or more of the Companies shall reimburse Newco for the following start-up expenses: state-of-the-art desktop computer with modem, printer and Internet access, fax machine, and portable telephone. On an ongoing basis

**24**

during the term of the Consulting Agreements (or any of them), one or more of the Companies will reimburse Newco for Company-related telephone/fax/Internet access charges, personal auto travel expenses (30 cents/mile, plus tolls and similar charges) and food and lodging expenses to the extent assignments in Poughkeepsie, NY or other Company locations require overnight accommodations. Newco and the Companies will mutually agree in advance on the extent to which Newco personnel will be required to perform services on-site at any of the Companies' locations and/or on the extent of any necessary inter-state travel. Newco will maintain a single office in Somerset, New Jersey. The Companies will also reimburse Newco for the cost of Newco purchasing full family medical coverage for me and my family pursuant to an insurance plan or program that shall be mutually agreeable to the Companies and Newco.

D. **Consultant Relationship**. You agree (on behalf of the Companies) and acknowledge that Newco will serve exclusively as a consultant to the Companies. As such, the time and manner of the services to be provided by Newco shall be in Newco's sole discretion. Notwithstanding the foregoing, Newco will be available during normal business hours, Monday through Friday, to provide all required consulting services, subject to mutual agreement of the parties to the contrary. Absent prior agreement of the parties, Newco and its employees will not be available to perform consulting services on weekends, major holidays and for four (4) weeks (to be identified in advance) during each year of the consulting arrangement

II. **Stock Ownership and Co-Investment Opportunities**

You agree that if Newco's performance under the Consulting Agreements meets or exceeds your expectations, you will negotiate with Newco in good faith with respect to (a) increasing the aggregate base consulting fee in years two and three of each Consulting Agreement, (b) granting Newco the right to receive an equity stake in one or more of the Companies, and/or (c) granting Newco the right to receive an equity stake in one or more new ventures to be considered by you or the Companies during the term of the Consulting Agreements. We agree that the foregoing does not represent any binding obligation on your part or on the part of the Companies to grant Newco any such equity stake(s), but only to negotiate with Newco in good faith if performance under the Consulting Agreements is satisfactory.

III. **Legal Binding Effect**

This Letter of Intent constitutes a binding contract until such time as the definitive agreements referenced herein are executed; the parties shall be legally bound hereby once this Letter of Intent has been executed by the parties hereto.

If the foregoing is satisfactory to you, please indicate your acceptance of

03/06/2000  18:40    2128078752                 25                                PAGE  01
                                                 DIVA                              P.02/02

this Letter of Intent and the terms and conditions contained herein by signing and
returning to me an executed copy of this Letter of Intent.

                                            Very truly yours,

                                            _[signature]_

                                       Laszlo Hajdu-Nemeth (on behalf
                                       of Newco, an entity in formation)

                                       Peter Zachariou (personally and
                                       on behalf of the Companies)

4

NWK3: 483036.01

TOTAL P.02