UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIVE BRANDS HOLDINGS, LLC,<br><br>　Plaintiff,<br><br>v.<br><br>GASTRONOMICO GRACIAS A DIOS, SOCIEDAD RESPONSABILIDAD LIMITADA de CAPITAL VARIABLE; XAIME NIEMBRO ALVAREZ; PABLO LOPEZ VARGAS; JOSE ENRIQUE JIMENEZ BARCENAS; and OSCAR HERNANDEZ SANTIAGO,<br><br>　Defendants. | Case No. 1:20-cv-1213 |

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, LIVE BRANDS HOLDINGS, LLC, hereby sues GASTRONOMICO GRACIAS A DIOS, SOCIEDAD RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE, XAIME NIEMBRO ALVAREZ, PABLO LOPEZ VARGAS, JOSE ENRIQUE JIMENEZ BARCENAS, and OSCAR HERNANDEZ SANTIAGO (collectively, Defendants), and states as follows:

### The Parties

1. Plaintiff, Live Brands Holdings, LLC (Live Brands or Plaintiff), is a limited liability company formed and existing under the laws of the state of Florida, with its principal place of business in Florida. Live Brands is a successor in interest to the rights of Domaine Select Wine & Spirits, LLC (DSWS), a Delaware limited

liability company, with its principal place of business at 105 Madison Avenue, New York, New York, 10016, in New York County.

2. Live Brands is a single member limited liability company and its sole member is BAF II Brand Holdings, Inc., a Florida corporation with its principal place of business located in Florida.

3. Defendant, Gastronomico Gracias a Dios, Sociedad Responsabilidad Limitada de Capital Variable (GAD), is a corporation formed and existing under the laws of the country of Mexico with its principal place of business located in Mexico.

4. Defendant, Xaime Niembro Alvarez (Alvarez) is a citizen and resident of the country of Mexico and is not lawfully admitted for permanent residence in the United States and is not domiciled in the State of Florida.

5. Defendant, Pablo Lopez Vargas (Vargas) is a citizen and resident of the country of Mexico and is not lawfully admitted for permanent residence in the United States and is not domiciled in the State of Florida.

6. Defendant, Jose Enrique Jimenez Barcenas (Barcenas) is a citizen and resident of the country of Mexico and is not lawfully admitted for permanent residence in the United States and is not domiciled in the State of Florida.

7. Defendant, Oscar Hernandez Santiago (Santiago) is a citizen and resident of the country of Mexico and is not lawfully admitted for permanent residence in the United States and is not domiciled in the State of Florida. (Alvarez,

Vargas, Barcenas and Santiago are collectively referred to as the Individual Defendants).

## Jurisdiction

8. The amount in controversy is in excess of $75,000, exclusive of interests, costs, and attorneys' fees.

9. This Court has subject matter jurisdiction because the amount in controversy exceeds the sum or values of $75,000, exclusive of interest and costs, and is between a citizen of Florida, as Plaintiff, and citizens of a foreign country, Mexico, and none of the Defendants are lawfully admitted for permanent residence in the United States who are domiciled in the State of Florida.

10. This Court has personal jurisdiction over the parties because: (a) the basis of this lawsuit is a contract between DSWS and GAD which required substantial acts to be performed by Defendants in New York; (b) injuries as a result of Defendants' breaches occurred in New York County, New York; (c) the contract at issue has a specific provision which requires that a lawsuit to resolve any dispute involving the contract "must be brought in New York, New York."; and (d) the contract requires the Individual Defendants who negotiated and agreed to the terms of the contract, as the four shareholders of GAD, to transfer their shares of GAD to a Florida entity, as more fully alleged below.

## Substantive Allegations

11. GAD produces, and owns the registered trademark rights in, Mezcal brand alcoholic spirits.

3

12. DSWS entered into a binding Memorandum of Understanding (MOU) with GAD, a copy of which is attached as **Exhibit 1**. As such, there was both an offer and an acceptance of the terms of the MOU by both DSWS and GAD.

13. DSWS and GAD each gave good and valuable consideration in exchange for entering into the MOU.

14. The MOU states specifically that it is the intent of DSWS and GAD that the parties be bound by the provisions of the MOU.

15. The MOU provides DSWS, along with other rights, exclusive global distribution rights to spirits produced by GAD and also appoints DSWS as the exclusive GAD importer for the United States, including granting the right to handle all marketing and promotional activities in the United States.

16. Under the terms of the MOU, DSWS (or affiliate) agreed to invest $750,000 in GAD Spirits for a 50% ownership interest in GAD Spirits, LLC, a Florida limited liability company (GAD Spirits) (Ex. A, ¶4(a)). The Individual Defendants, as shareholders of GAD, agreed to contribute 100% of their shares in GAD to GAD Spirits (Ex. A, ¶4(b)). As such, under the terms of the MOU, DSWS was to own 50% of GAD Spirits and the then-existing shareholders of GAD were to own the other 50% of the shares of GAD Spirits, and GAD Spirits was to own 100% of the shares of GAD.

17. DSWS provided GAD $285,000 of the $750,000, which, under the terms of the MOU, were used for construction and expansion of GAD's production facilities in Oaxaca, Mexico.

18. DSWS also provided GAD $115,000 which, under the terms of the MOU, were to be used to for general working capital (inventory, dry goods, and other costs associated with proposed development and transaction fees).

19. The remaining $350,000 of the $750,000 was to be funded by DSWS in accordance with a funding schedule set forth in the MOU and was conditioned on: (a) GAD achieving certain operating targets identified on Exhibit C to the MOU; (b) GAD redeeming the membership interests owned by the then-existing owners of GAD in GAD Spirits; (c) GAD having ownership, free of liens, of the fixed assets used in the production of distilled spirits produced by GAD; and (d) the right to use the land where GAD operates for 30 to 50 years, without expense.

20. Notwithstanding GAD's failure to comply with all of the conditions precedent for the funding of the remaining $350,000, DSWS attempted to contribute the $350,000 to GAD but GAD wrongfully refused to accept the money.

21. DSWS has assigned all of its rights and obligations under the MOU to Plaintiff Live Brands.

22. GAD breached the MOU by:

   (a) Failing to provide proof to DSWS or Live Brands that GAD has ownership, free and clear of liens, of the fixed assets used in the production of the distilled spirits produced by GAD;

   (b) Failing to provide proof to DSWS or Live Brands that it has the right to redeem the membership interests of the existing investors of GAD

in GAD Spirits upon DSWS paying the remaining $350,000 due under the MOU;

(c) Failing to provide proof to DSWS or Live Brands that GAD achieved specified operating targets, as specified in Exhibit C to the MOU;

(d) Failing to provide proof to DSWS or Live Brands that GAD has the right to use the land where GAD operates for 30 to 50 years without expenses;

(e) Failing to provide proof to DSWS or Live Brands that the GAD shareholders contributed 100% of their shares in GAD to GAD Spirits in exchange for a direct or indirect 50% ownership interest in GAD Spirits; and

(f) Failing to provide DSWS or Live Brands a 26.67% ownership interest in GAD Spirits for its proportional funding of the amounts set forth in the MOU.

(g) Upon information and belief, granting distribution rights to one or more third parties for spirits produced by GAD, which violates Plaintiff's rights under the MOU to be the exclusive GAD importer for the United States, including granting the right to handle all marketing and promotional activities in the United States; and

(h) Not acting in good faith and violating the implied covenant of good faith and fair dealing by refusing to comply with the conditions precedent for funding the $350,000 and then refusing to accept the $350,000 when tendered by DSWS.

23. Live Brands, as assignor of the rights of DSWS under the MOU, has been damaged as a result of GAD's breach of the MOU.

### COUNT I – Breach of Contract Against GAD (Damages)

24. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 23, as if fully set forth herein.

25. This is a cause of action seeking monetary damages for GAD's breach of the MOU.

**WHEREFORE,** Live Brands prays this Court enter a judgment in favor of Live Brands and against GAD for compensatory damages for breach of the MOU, for interest on all amounts owed, and for such other and further relief as may be deemed appropriate.

### COUNT II – Breach of Contract Against GAD (Specific Performance) (Plead in the Alternative)

26. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 23, as if fully set forth herein.

27. The MOU currently is in effect, is binding on GAD, and may be specifically enforced.

28. DSWS performed and/or is excused from performing its obligations under the MOU.

29. Live Brands, as assignor of the rights of DSWS under the MOU, is ready, willing, and able to perform any and all remaining obligations that the MOU requires DSWS to perform.

30. The MOU requires GAD:

(a) to provide DSWS or Live Brands a 26.67% ownership interest in GAD Spirits for its proportional funding of the amounts set forth in the MOU;

(b) to accept the additional $350,000 due for an additional 23.43% interest in GAD Spirits;

(c) to provide proof to Live Brands that GAD has ownership, free and clear of liens, of the fixed assets used in the production of the distilled spirits produced by GAD;

(d) to provide proof to Live Brands that it has the right to redeem the membership interests of the existing investors of GAD in GAD Spirits upon Live Brands paying the remaining $350,000 due under the MOU;

(e) to provide proof to Live Brands that GAD achieved specified operating targets, as specified in Exhibit C to the MOU;

(f) to provide proof to Live Brands that GAD has the right to use the land where GAD operates for 30 to 50 years without expense; and

(g) to provide proof to Live Proof that the GAD shareholders contributed 100% of their shares in GAD to GAD Spirits in exchange for a direct or indirect 50% ownership interest in GAD Spirits.

31. GAD has failed to perform the aforementioned contractual obligations.

32. GAD is able and has the means, authority, and power necessary to perform the aforementioned contractual obligations.

33. There is nothing preventing GAD from performing the aforementioned contractual obligations.

34. GAD has voluntarily, and of its own free will, chosen not to perform the aforementioned contractual obligations.

35. For all the aforementioned reasons, Live Brands is entitled to an order directing GAD to specifically perform the aforementioned contractual obligations.

36. Specific performance is the only adequate remedy available to Live Brands because ownership interest GAD Spirits is unique and there is no suitable substitute, such as monetary damages, which can compensate Live Brands for GAD's breach of the MOU.

**WHEREFORE,** Live Brands prays this Court enter a judgment in favor of Live Brands and against GAD: (a) enforcing the conversion of DSWS's investment into equity, as required under the terms of the MOU, resulting in a 26.67% ownership of GAD Spirits; (b) enforcing the provisions of the MOU by requiring GAD to accept the additional $350,000 due for an additional 23.43% interest in GAD Spirits; (c) requiring GAD to provide proof to Live Brands that GAD has ownership, free and clear of liens, of the fixed assets used in the production of the distilled spirits produced by GAD; (d) requiring GAD to provide proof to Live Brands that it has the right to redeem the membership interests of the existing investors of GAD in GAD Spirits upon Live Brands paying the remaining $350,000

due under the MOU; (e) requiring GAD to provide proof to Live Brands that GAD achieved specified operating targets, as specified in Exhibit C to the MOU; (f) requiring GAD to provide proof to Live Brands that GAD has the right to use the land where GAD operates for 30 to 50 years without expense; and (g) requiring Gad to provide proof to Live Proof that the GAD shareholders contributed 100% of their shares in GAD to GAD Spirits in exchange for a direct or indirect 50% ownership interest in GAD Spirits.  Live Brands also prays this Court enter a judgment for costs and such other and further relief as may be deemed just under the circumstances.

### COUNT III – Breach of Contract Against Individual Defendants (Specific Performance)

37.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 23, 28 and 29, as if fully set forth herein.

38.     The Individual Defendants, as the four shareholders of GAD, negotiated the terms of the MOU and agreed to the term of the MOU, including the provision where the Individual Defendants agreed to contribute 100% of their shares in GAD to GAD Spirits in exchange for a direct or indirect 50% ownership interest in GAD Spirits.

39.     The MOU currently is in effect, is binding on the Individual Defendants to the extent the Individual Defendants are required to contribute 100% of their shares in GAD to GAD Spirits in exchange for a direct or indirect 50% ownership interest in GAD Spirits, and may be specifically enforced.

40. Despite numerous requests, neither DSWS nor Live Brands has received confirmation that the Individual Defendants have contributed 100% of their shares in GAD to GAD Spirits in exchange for a direct or indirect 50% ownership interest in GAD Spirits.

41. The Individual Defendants have failed to perform the aforementioned contractual obligation.

42. The Individual Defendants are able and have the means, authority, and power necessary to perform the aforementioned contractual obligation.

43. There is nothing preventing the Individual Defendants from performing the aforementioned contractual obligation.

44. The Individual Defendants have voluntarily, and of their own free will, chosen not to perform the aforementioned contractual obligation.

45. For all the aforementioned reasons, Live Brands is entitled to an order directing the Individual Defendants to specifically perform the aforementioned contractual obligation.

46. Specific performance is the only adequate remedy available to Live Brands because ownership interest GAD Spirits is unique and there is no suitable substitute, such as monetary damages, which can compensate Live Brands for the Individual Defendants' failure to contribute their shares of GAD to GAD Spirits, as required by the MOU.

**WHEREFORE,** Live Brands prays this Court enter a judgment in favor of Live Brands and against the Individual Defendants, requiring the Individual

Defendants to contribute 100% of their shares in GAD to GAD Spirits in exchange for a direct or indirect 50% ownership interest in GAD Spirits. Live Brands also prays this Court enter a judgment for costs and such other and further relief as may be deemed just under the circumstances.

**COUNT IV – Promissory Estoppel Against the Individual Defendants (Plead in the Alternative)**

47. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 9, and 11, as if fully set forth herein.

48. This Court has personal jurisdiction over the Individual Defendants because the Individual Defendants, as the four shareholders of GAD, made a promise to transfer their shares of GAD to a Florida entity, as more fully alleged below.

49. Plaintiff alleges in the alternative to its breach of contract claim, that Live Brands is entitled to recover under the doctrine of promissory estoppel if it is determined that either a valid and enforceable contract does not exist, the existing contract does not cover the subject matter of the dispute between Live Brands and the Individual Defendants, or the existing contract is void, invalid, or unenforceable as to the Individual Defendants.

50. In July 2018, the Individual Defendants made an unambiguous promise to DSWS to contribute 100% of their shares in GAD to GAD Spirits.

51. The Individual Defendants, as shareholders of GAD, were in a position to fully perform, fulfill and carry out the terms and conditions of the promise they made to DSWS.

52. It was foreseeable that the Individual Defendants' promise would cause or induce DSWS to act in reasonable reliance on the Individual Defendants' promise.

53. DSWS acted in accordance with all directives, instructions, and requests made to it by the Individual Defendants.

54. In reliance on the Individual Defendants' promise, DSWS agreed to invest $750,000 in GAD Spirits for a 50% ownership interest in GAD Spirits; provided GAD $285,000 of the $750,000, which were used for construction and expansion of GAD's production facilities in Oaxaca, Mexico; provided GAD $115,000 which were to be used to for general working capital (inventory, dry goods, and other costs associated with proposed development and transaction fees); and attempted to contribute the remaining $350,000 to GAD (but GAD wrongfully refused to accept the money).

55. As a result of DSWS' reliance, DSWS—and by extension, its' successor-in-interest, Live Brands—suffered a substantial change in position.

56. Along with DSWS' monetary investment in GAD Spirits, Live Brands forsake other distribution and importer opportunities in reliance on the Individual Defendants' promise.

57. As a result, Live Brands, successor in interest to the rights of DSWS, has suffered actual and significant injury.

58. Injustice can be avoided only by enforcement of the Individual Defendants' promise.

**WHEREFORE,** Live Brands prays this Court enter a judgment in favor of Live Brands and against the Individual Defendants, requiring the Individual Defendants to contribute 100% of their shares in GAD to GAD Spirits in exchange for a direct or indirect 50% ownership interest in GAD Spirits. Live Brands also prays this Court enter a judgment for costs and such other and further relief as may be deemed just under the circumstances.

### DEMAND FOR JURY TRIAL

Plaintiff, Live Brands Holdings, LLC, hereby demands a trial by jury on all issues so triable.

*s/John D. Goldsmith*
JOHN D. GOLDSMITH
Florida Bar No. 444278
jgoldsmith@trenam.com
idawkins@trenam.com
svanboskerck@trenam.com
CATHERINE M. DIPAOLO
Florida Bar No. 71685
cdipaolo@trenam.com
nhawk@trenam.com
TRENAM, KEMKER, SCHARF, BARKIN,
FRYE, O'NEILL & MULLIS, P.A.
101 E. Kennedy Blvd., Suite 2700
Tampa, FL 33602
813-223-7474
813-229-6553 (fax)
Attorneys for Plaintiff

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 6, 2023, a true and correct copy of the foregoing **Second Amended Complaint and Demand for Jury Trial** was

electronically filed by using the Court's CM/ECF system, which will send a notice of electronic filing and copy to the parties and counsel of record:

>David H. Tennant, Esq.
>Law Office of David Tennant PLLC
>3349 Monroe Avenue, Suite 345
>Rochester, NY  14618
>david.tennant@appellatezealot.com

*s/John D. Goldsmith*
Attorney
