# EXHIBIT 1

## Memorandum of Understanding

Entered on this day of July, 12 2018 by and between Domaine Select Wine and Spirits, LLC (hereinafter referred to as "DSWS"), a limited liability company incorporated under the laws of the State of Delaware or assigns and Grupo Gastronómico Gracias a Dios, Sociedad de Responsabilidad Limitada de Capital Variable (hereinafter referred to as "GAD"), incorporated under the laws of Mexico and the GAD shareholders listed on Schedule D (hereinafter the "GAD Shareholders" and, together with GAD, the "GAD Group"). DSWS is engaged in the business of wine and spirit importation and distribution. DSWS also has ownerships stakes in several proprietary wine and spirit brands. GAD is engaged in the business of producing distilled spirits at one or more distilleries in or around Oaxaca, Mexico. DSWS, GAD and the GAD Shareholders are referred to collectively as the "Parties".

**Whereas**, GAD owns the global trademark rights to the "Gracias a Dios" brands (hereinafter referred to as the ("GAD Brands");

**Whereas**, GAD also owns certain fixed assets that it utilizes in the production of distilled spirits and has an interest in several parcels of real estate on which GAD grows agave plants and produces distilled mezcal and gin for global sale;

**Whereas**, the Parties desire to combine their respective expertise and relationships to build the GAD Brands currently produced by GAD;

**Whereas**, the Parties also intend to develop and launch new brands that GAD and DSWS might produce together for global distribution.

Now, therefore the Parties agree as follows:



1. **Trademark.** The GAD Group represents that GAD owns the global trademarks rights for the Gracias a Dios brand for Mezcal and that these global trademark- protected rights are appropriately registered in the following markets: European Union, Mexico, and Asia.

2. **Role and Responsibility of DSWS.** DSWS shall be granted exclusive global distribution rights to the spirits produced by GAD. The GAD Group also acknowledges that DSWS shall be appointed by GAD as exclusive importer for the United States market. DSWS shall also handle all marketing and promotional activities in the United States. Further, DSWS shall collaborate with GAD on marketing and promotional activities inside the United States as well as other international markets.

3. **Role and Responsibility of GAD.** GAD shall continue to be engaged in the production of Mezcal under the brand Gracias s Dios brand and explore other distilled brands that GAD and DSWS may launch or acquire together for export from Mexico. Additionally, GAD shall collaborate with DSWS on marketing and promotional activities inside the United States as well as other international markets. The GAD Shareholders agree to carry out all actions necessary to cause GAD to meet its roles as stated herein. The GAD Shareholders will also (i) cause Magueyes Gracias a Dios, S.P.R de R.L. and Magueyeria OHS, S.P.R. de R.L. to enter into agreement for the sale of agave to GAD and (ii) cause GAD to have ownership (free of liens) of the fixed assets used in the production of the distilled spirits produced by GAD, and the right to use the land currently utilized by GAD for a period of time of no less that 30 years but not to exceed 50 years at no expense, but specifically excludes ownership rights to the land itself, all of the above to the satisfaction of DSWS.



4. (a) **DSWS Investment.** DSWS or one of its affiliates shall invest US$750,000.00 into GAD Spirits, LLC (hereinafter referred to as "GAD Spirits"), a limited liability company incorporated under the laws of Florida, for a 50% ownership interest. $285,000 of the $750,000 shall be released pursuant to the schedule attached hereto as Exhibit A for construction of expanded facilities at GAD's plant located at Matatlán, Oaxaca, Mexico. GAD estimates that the proposed expansion should increase mezcal production to at least 120,000 bottles per annum. The proposed expansion plan is attached hereto as Exhibit B. $115,000 of the proposed new funding of $750,000 shall be for general working capital purposes including inventory, dry goods, and other costs associated with proposed development and fees incurred in connection with this

transaction. The schedule for the funding of the $115,000 for general working capital purposes referred to above shall also be include in the funding schedule attached as Exhibit A. The remaining $350,000 shall be available to redeem the membership interests owned by existing investors of GAD in GAD Spirits pursuant to a funding schedule that is predicated on GAD achieving certain operating targets that shall be attached as Exhibit C. It is understood that DSWS' investment is predicated on GAD having ownership (free of liens) of the fixed assets used in the production of the distilled spirits produced by GAD, and right to use the land currently utilized by GAD for a period of time of no less that 30 years but not to exceed 50 years at no expense, but specifically excludes ownership rights to the land itself. The exact form to memorialize this arrangement shall be determined by counsel for DSWS in consultation with GAD's counsel. DSWS's obligations under this MOU will be subject to its satisfactory due diligence of GAD's legal, financial, commercial and operational condition.



**(b) GAD Shareholders' investment.** The GAD Shareholders shall contribute 100% of their shares to GAD Spirits, in exchange for a direct or indirect 50% ownership interest in GAD Spirits (i.e. 12.5% each GAD Shareholder).



5. **Board of Directors of GAD.** DSWS shall appoint two (2) Directors to the GAD Spirits Board of Directors and GAD shall have the right to appoint two (2) Directors. The parties shall also agree on one (1) independent Director that shall have industry expertise.

6. **Operating Agreement.** DSWS shall cause to have counsel incorporate these corporate governance provisions in an Operating Agreement shall govern the relationship between the parties. Attached as Exhibit D is a current shareholder list for GAD.

7. **Governing Law and Jurisdiction.** The parties agree that any disputes that cannot be solved by good faith negotiations between the Parties must be brought in New York, New York.

8. **Binding MOU.** The parties acknowledge that it is the intent of the Parties to be bound by the provisions of the MOU, subject to the last sentence of Section 4(a) until the earlier of September 30, 2018 or the date of the execution of Definitive Agreements and other related agreements.

9. **Confidentiality.** The Parties agree to keep this transaction confidential until such time as all necessary and material agreements are executed and the proposed funding is consummated.



The terms of this Memorandum of Understanding shall be incorporated into Definitive Agreements and executed by the Parties. The costs of such legal work shall be paid by GAD. Should the parties fail to enter into the required Definitive Agreements that are consistent with the terms contained herein then DSWS shall reimburse GAD for its share of out of pocket expenses that GAD paid in connection with this transaction from the effective date of this MOU.

Domaine Select Wine & Spirits, Inc.

By: _[signature]_

Title: President

Date: 16-July 2018

Grupo Gastronomico Gracias a Dios

By: Jaime Niembro Alvarez

Title: Owner - CEO

Date: 12 July 2018

**EXHIBIT A**
**INVESTMENT CASHFLOW**

## GRUPO GASTRONOMICO GRACIAS A DIOS S DE RL DE CV
### 2018

### Cash Flow Statement

| | Jun 2018 | Jul 2018 | Aug 2018 | Sep 2018 | Oct 2018 | Nov 2018 | Dec 2018 | 2018 | |
|---|---|---|---|---|---|---|---|---|---|
| **DSWS INVESTMENT** | | | | | | | | | |
| Net Income usd dollars | 100,000 | 80,000 | 70,000 | 80,000 | 70,000 | | | 400,000 | USD |
| Exchange rate mex 14/05/2018 | 19.05 | 19.05 | 19.05 | 19.05 | 19.05 | | | | |
| Net Income mexican pesos | 1,905,000 | 1,524,000 | 1,333,500 | 1,524,000 | 1,333,500 | | | 7,620,000 | MNX |
| **Cash Flow from Operating Activities:** | | | | | | | | | |
| Bottles (30,000) | 200,000 | 200,000 | 100,000 | 100,000 | 100,000 | | | 700,000 | |
| Maguey (82,000kg) | 200,000 | 200,000 | 300,000 | 200,000 | 100,000 | 100,000 | | 1,100,000 | |
| **Net Cash Flow from Operating Activities:** | 400,000 | 400,000 | 400,000 | 300,000 | 200,000 | 100,000 | - | 1,800,000 | |
| **Construction Sources and Uses Schedule:** | | | | | | | | | |
| Repayment of Advances Used for Construction | 202,000 | 202,000 | 202,000 | 202,000 | 202,000 | | | 1,010,000 | |
| Warehouse "A" (Bottling, office and supplies) | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | | | 1,500,000 | |
| GIN/Mezcal New Factory | | 200,000 | 100,000 | | | | | 300,000 | |
| New Oven Construction | | | | 108,690 | | | | 108,690 | |
| Oscar Mezcal Factory Renewals | | | | 400,000 | 400,000 | 103,000 | | 903,000 | |
| Machinery and Equipment (Distill Pots) | 300,000 | 112,000 | 100,000 | 100,000 | 50,000 | 50,000 | | 712,000 | |
| Expenditures for Investments | 75,000 | 50,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 225,000 | |
| Sustainability (solar electricity and rain collection) | | | 200,000 | 200,000 | 100,000 | | | 500,000 | |
| Logistics/Transportation (outside Oaxaca suppliers) | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | | | 300,000 | |
| Architectural and Ingeneer advisors | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | | 150,000 | |
| Local Authorities Construction Permits | 50,000 | 25,000 | 25,000 | | | | | 100,000 | |
| **Net Construction Sources and Uses Schedule:** | 1,012,000 | 974,000 | 1,032,000 | 1,415,690 | 1,157,000 | 198,000 | 20,000 | 5,808,690 | |
| **Decrease in cash** | 1,412,000 | 1,374,000 | 1,432,000 | 1,715,690 | 1,357,000 | 298,000 | 20,000 | 7,608,690 | |
| **Free Cash Flow** | 493,000 | 643,000 | 544,500 | 352,810 | 329,310 | 31,310 | 11,310 | 11,310 | |
| **Cash at Beg of Month** | 1,905,000 | 2,017,000 | 1,976,500 | 2,068,500 | 1,686,310 | 329,310 | 31,310 | 7,620,000 | |
| **Cash at End of Month** | 493,000 | 643,000 | 544,500 | 352,810 | 329,310 | 31,310 | 11,310 | 11,310 | |

**EXHIBIT B**

**GRUPO GASTRONOMICO GRACIAS A DIOS S DE RL DE CV**
Activities Calendar 2018

| Activity | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER |
|---|---|---|---|---|---|---|---|
| Bottles (30,000) | ■ | ■ | ■ | ■ | ■ | ■ | |
| Maguey (82,000kg) | ■ | ■ | ■ | ■ | ■ | | |
| Debt to GAD for construction (we payed for July´s expenses) | | ■ | | | ■ | | |
| Warehouse "A" (Bottling, office and supplies) | | | | ■ | ■ | | |
| GIN/Mezcal New Factory | | | | ■ | | | |
| New Oven Construction | ■ | ■ | | | | | |
| Oscar Mezcal Factory Renewals | ■ | ■ | ■ | ■ | | ■ | |
| Machinery and Equipment (Distill Pots) | ■ | ■ | ■ | ■ | ■ | ■ | ■ |
| Expenditures for Investments | ■ | ■ | ■ | | | | |
| Sustainability (solar electricity and rain collection) | | | | ■ | ■ | | |
| Logistics/Transportation (outside Oaxaca suppliers) | ■ | ■ | ■ | ■ | ■ | ■ | |
| Architectural and Ingeneer advisors | ■ | ■ | ■ | | | | |
| Local Authorities Construction Permits | ■ | ■ | | | | | |

**EXHIBIT C**
**FUNDING SCHEDULE TARGETS**

**GRUPO GASTRONOMICO GRACIAS A DIOS DSWS INVESTMENT SCHEDULE**

IN USD

**JANUARY 2019 $200,000**

*WHEN GRUPO GASTRONOMICO GAD PROVES THAT THE INVESTMENTS IN THE RENEWALS ARE DONE.

**JANUARY 2020 $150,000**

*WHEN GRUPO GASTRONOMICO GAD KEEPS UP FOR A YEAR WITH THE PRODUCTION OF 10,000 BOTTLES ON MONTHLY BASES.

NOTES

- THE USE OF THIS INVESTMENT SHOULD ONLY BE FOR BUY BACK FROM EXISTING SHAREHOLDERS IN GAD.

- FULL INVESTMENT AMOUNTS WILL ONLY BE FUNDED WHEN TARGETS ARE REACHED *(GAD WILL SEND THE ARCHITECTUTAL PLANS AND A PRODUCTION SCHEME IN ORDER TO PROVE THAT WE ACHIEVE THE FIRST GOAL, PRODUCTION INVENTORIES WILL SERVE AS A PROVE FOR SECOND PAYMENT).*

- IF TARGETS ARE NOT REACHED THE PAYMENT WILL BE PAY IN THE PORCENTAGE OF THE AMOUNT THE OTHER PARTY REACHES.