N8LClivC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

LIVE BRANDS HOLDINGS, LLC,

                    Plaintiff,

          v.                          20 Civ. 1213 (AS)
                                      Telephone Conference
GASTRONOMICO GRACIAS A DIOS,
SOCIEDAD RESPONSABILIDAD
LIMITADA de CAPITAL VARIABLE;
XAIME NIEMBRO ALVAREZ; PABLO
LOPEZ VARGAS; JOSE ENRIQUE
JIMENEZ BARCENAS; and OSCAR
HERNANDEZ SANTIAGO,

                    Defendants.

------------------------------x
                                      New York, N.Y.
                                      August 21, 2023
                                      2:00 p.m.

Before:

                 HON. ARUN SUBRAMANIAN,

                                      District Judge

                      APPEARANCES

TRENAM KEMKER SCHARF BARKIN FRYE O'NEILL & MULLIS PA
       Attorneys for Plaintiff
BY:  JOHN D. GOLDSMITH

LAW OFFICE OF DAVID TENNANT PLLC
       Attorney for Defendants
BY:  DAVID H. TENNANT
       -and-
LUPKIN PLLC
BY:  JONATHAN D. LUPKIN

1          (The Court and all parties appearing telephonically)

2          THE COURT:  Good afternoon.  This is

3   Judge Subramanian.  We are here in Live Brands v. Gastronomico

4   Gracias a Dios, docket No. 20 Civ. 1213.  Could I please have

5   appearances from the parties.

6          MR. GOLDSMITH:  Yes, your Honor.  May it please the

7   Court, John Goldsmith.  I represent the plaintiff, Live Brands.

8          MR. LUPKIN:  Good afternoon, your Honor.  Jonathan

9   Lupkin from the firm of Lupkin PLLC on behalf of the

10  defendants.

11         THE COURT:  Great.  Good afternoon to everyone --

12         MR. TENNANT:  I'm sorry, your Honor, to interrupt.

13  It's David Tennant.  I'm also counsel to the defendants.

14         THE COURT:  Good afternoon, Mr. Tennant.

15         So as I understand it, we are post discovery.  Neither

16  of the sides have filed motions for summary judgment.  So we're

17  here, ready for trial; is that correct?

18         MR. GOLDSMITH:  From the plaintiff's perspective, yes.

19         MR. LUPKIN:  Yes --

20         THE COURT:  Mr. Goldsmith -- why don't we do this in

21  sequence, because we do have a court reporter and I want to

22  make sure that the record is clear.

23         Mr. Goldsmith, from your perspective, is the plaintiff

24  prepared for trial?  And what would your proposal be as to the

25  scheduling of that trial?

1      MR. GOLDSMITH:  Your Honor, the plaintiff is prepared

2  and ready to go to trial.  We believe the case will take three

3  to five trial days, depending on the length of jury selection.

4  We propose a trial in November.

5      THE COURT:  Okay.  And let me turn to the defendants.

6      Mr. Lupkin or Mr. Tennant, do you want to take the

7  lead and tell me, from the defendants' perspective, what your

8  view is.

9      MR. LUPKIN:  Yes.  Thank you, your Honor.  Jonathan

10  Lupkin on behalf of the defendants.

11      We are ready to go to trial, but with one caveat.  We

12  indicated in our status letter that we believe there are a

13  couple of issues that would, if granted, be dispositive and

14  obviate the need for trial.  I recognize that would probably be

15  in the nature of a summary judgment motion.  I've just been

16  retained within the last week, but it seems to me that there

17  would be efficiencies if we could resolve this without the

18  trial, but if the Court is disinclined to do that, we're

19  prepared to go to trial in November or December.

20      THE COURT:  What are those issues?

21      MR. LUPKIN:  It's really one issue, your Honor.  It's

22  a question of election of remedies.  We pleaded the affirmative

23  defense in our second amended complaint, paragraph 64.  The

24  claim is very simple.  There is an MOU here that is the subject

25  matter of this lawsuit.  There were certain payments made in

1   connection with the memorandum of understanding.  In connection

2   with those payments, there were promissory notes given by my

3   client, GAD, Gastronomico Gracias a Dios, to secure the

4   payments of those notes in the event that the final definitive

5   agreements did not come to fruition.  They did not.  The trial

6   here involves whether or not there's been a breach of the

7   contract, and if so, what the remedy would be.

8           Separately, the plaintiff brought suit to enforce the

9   terms of those notes in Mexico during the pendency of this

10  case, secured a judgment, and has collected on, I believe it's

11  100 percent of the amount of the notes that were sued upon.

12  Our view is that the suit and collection upon those notes is an

13  election of remedies, and having elected to pursue the recovery

14  of that money, the case should -- that's basically all there is

15  to it.  They've elected their remedies, they've secured their

16  recovery, and the case should not go forward on that basis

17  alone.

18          THE COURT:  And why wasn't this issue raised before

19  the Court by the summary judgment deadline?

20          MR. LUPKIN:  I can't answer that question, your Honor.

21  Again, I was retained within the last week, but I can turn the

22  issue over to Mr. Tennant, who was here, with your permission.

23  I know that you typically have only one person speak, but under

24  the circumstances, there's not an entire overlap of history

25  here.

1          THE COURT:  Maybe just for my benefit you can clarify,

2     Mr. Lupkin.  Are you solely representing Gastronomico, the

3     enterprise?

4          MR. LUPKIN:  No, I've come in as trial counsel.

5          THE COURT:  For all the defendants?

6          MR. LUPKIN:  Yes.

7          THE COURT:  So you represent all the defendants.

8          Mr. Tennant, are you only representing a subset of the

9     defendants or all of the defendants?

10          MR. TENNANT:  All of the defendants, your Honor.

11          THE COURT:  So if I understand it, Mr. Tennant, you've

12     been with us in this case for longer than Mr. Lupkin, but

13     you're both representing the same client; right?

14          MR. TENNANT:  Correct.

15          THE COURT:  Mr. Tennant, then, can you explain why

16     your clients did not file this motion summarized by Mr. Lupkin

17     by the summary judgment deadline?

18          MR. TENNANT:  Yes, your Honor.  We did raise it with

19     Judge Cronan back in November and December of last year, and it

20     was going to be a successive motion to dismiss because it was a

21     motion to dismiss on other grounds that was pending.

22     Judge Cronan denied the motion without prejudice to it being

23     refiled as he took time to reach the first motion to dismiss,

24     which he denied.

25          In terms of what's happened since, we've had an effort

1    to mediate the case.  Opposing counsel wanted to have a meeting

2    between the parties in order to pursue settlement negotiations.

3    That kind of followup to the mediation never happened.

4           Basically, plaintiff went into radio silence in terms

5    of the case.  We were thinking that the case may have just gone

6    away on its own.  Having taken the view that this case really

7    had no legs in the first place and then plaintiff said okay,

8    we're going to trial, and it's like, okay, well, you know, so

9    be it, we'll go to trial, as well.  But, you know, it was no

10   intent to waive any rights here to bring a dispositive motion,

11   but our client has limited resources and was going to take time

12   and energy to put together a summary judgment motion, which did

13   not appear to us even to be necessary in light of plaintiff's

14   failure to prosecute the case.

15          THE COURT:  I hear you, Mr. Tennant, but you are not

16   asking for permission to file that precise motion, and there

17   was a deadline in the schedule, and I'm not hearing that you or

18   your clients or maybe your cocounsel reached out to the

19   plaintiff to determine what the status of the case was as you

20   have in connection with the joint letter that I asked and the

21   parties dutifully submitted.  So I don't know if that's an

22   excuse.

23          But let me ask a different question.  If I were to

24   deny the right to file this dispositive motion, how does that

25   election of remedies issue get presented?  Meaning, would that

1    be an issue that you would then present to the jury in this

2    case?

3              MR. TENNANT:  Your Honor, and maybe Mr. Lupkin wants

4    to address this, but it's our view that the election of

5    remedies is an affirmative defense and we think it would be for

6    the Court to decide.

7              MR. LUPKIN:  This is Mr. Lupkin speaking.

8              In the first instance, we think it's a matter of law

9    for the Court to decide.  We don't think that there are any

10   real disputed issues of fact.  But ultimately, if we had to

11   present it to the jury, we would present the facts that support

12   our claim for election of remedies and then the jury would be

13   in a position to determine whether or not those facts have been

14   established.

15             THE COURT:  Thank you, Mr. Lupkin.

16             Is your client involved in the Mexico litigation that

17   is kind of at the heart of this election of remedies issue or

18   are there other parties, separate parties that are in that

19   case?

20             MR. LUPKIN:  My understanding, and Mr. Tennant will

21   correct me if I'm wrong, is that all of the parties that are

22   involved in this case were also involved in the Mexican case.

23             THE COURT:  So let me turn to Mr. Goldsmith.

24             First, Mr. Goldsmith, if you could provide me with

25   your reaction to the defendants' argument concerning this

1  election of remedies issue and the request to file a

2  dispositive motion on that issue; and second, if you could just

3  provide me with a more fulsome explanation of what happened in

4  the Mexico litigation, I would appreciate it.

5          MR. GOLDSMITH:  Okay.  Thank you.

6          So, your Honor, with regard to the election of

7  remedies, we certainly disagree with a good amount of what

8  Mr. Tennant said, and we disagreed with him when we had

9  conversations outside of the context of the court pleadings

10  with regard to precisely what the litigation in Mexico was and

11  what it related to, and whether or not what happened in Mexico

12  factually, as well as legally, can constitute an election of

13  remedies.

14          And this is an issue that we think, number one, there

15  are going to be, at least from what I hear Mr. Tennant saying

16  and from what I understand has happened in Mexico, I think

17  there certainly will be factual issues in dispute if that's

18  what they're going to present.  If they've asserted this as an

19  affirmative defense, they have the obligation to present that

20  defense and to present the evidence and facts to support that.

21          These were not notes, these are special obligations

22  under Mexican law that are unique to Mexican law.  They are

23  sometimes defined by people who practice in both the U.S. and

24  Mexico — I do not — but they are sometimes defined as

25  confessions of judgment on steroids.  So these are obligations

1    that they agree to enter into that are independent of the

2    amounts and what are at issue in this case.  But regardless of

3    whether or not they are independent or they are related to the

4    underlying obligations, our clients are still entitled to the

5    relief that we are seeking in this case.

6         What happened in this case is that we entered into an

7    agreement, it was called a memorandum of understanding.  What

8    it specifically said is it's legally binding and enforceable.

9    Essentially, what we did is we provided a large amount of money

10   to the corporate defendant because they did not have the

11   resources to build out their production facilities in order to

12   distribute the product, the Mezcal product in the United

13   States.  We, in exchange for that, the agreement was that we

14   would then own 50 percent of the corporate defendant where a

15   new entity would be formed and the assets -- and all of the

16   assets of what go by the initials, the acronym GAD would be

17   transferred to that entity and we would own 50 percent and the

18   current owners of GAD would own 50 percent.  We have

19   substantial risk in making this investment because we're

20   dealing with a Mexican company.  We had no ability to secure

21   that obligation.  In exchange for that, they agreed to provide

22   us a 50-percent interest.  And they also agreed that we would

23   have the exclusive rights to market this product, the Mezcal

24   product in the United States.

25        THE COURT:  So Mr. Goldsmith, I'm going to stop you

N8LClivC

1    right there.

2           As I understand it, the memorandum of understanding is

3    at issue or was at issue in the Mexico case; correct?

4           MR. GOLDSMITH:  It was not, no.  The memorandum of

5    understanding was not at issue, it did not come up, it had

6    nothing to do with the issues raised in that case.  The

7    memorandum of understanding does not reference the obligations

8    that were at issue in Mexico.

9           THE COURT:  So let me just -- hold on for just a

10   second.

11          So Mr. Lupkin or Mr. Tennant, in the answer that you

12   filed in March of this year, your second affirmative defense is

13   election of remedies, and there in paragraph 64, you indicate

14   that in this other proceeding, Live Brands chose the remedy of

15   restitution of monies paid under the MOU, and that for that

16   reason, there's preclusion on this effort to enforce the MOU.

17   So it seems from your answer that your position is that the MOU

18   was at issue in the Mexican proceeding.  So I want to see if we

19   can figure that out.

20          MR. LUPKIN:  I'm sorry, your Honor.  This is Jonathan

21   Lupkin.  When you say --

22          THE COURT:  Let's make it very clear.  Mr. Goldsmith,

23   I just asked him whether the MOU was at issue in the Mexico

24   litigation and he said no.  In your answer in this case, you

25   say yes.  So what is the basis of your understanding that the

1    MOU was in fact at issue in the Mexico litigation?

2              MR. LUPKIN:  Well, the answer is I'd like to go back

3    to what Mr. Goldsmith said about there was no ability to secure

4    it in Mexico, these investments.  The response that I have is

5    the way to secure it was precisely the way they did secure it,

6    with these notes.

7              THE COURT:  Hold on, Mr. Lupkin.  I appreciate the

8    discussion, but first, just basics.  The MOU, was that issue in

9    the Mexico litigation or not, and then I'll let you explain.

10             MR. LUPKIN:  The answer is it was just a suit on the

11   notes.  The MOU was not included in the notes, no.

12             THE COURT:  Okay.  Continue.

13             MR. LUPKIN:  But as a factual matter, these notes were

14   signed as, I guess, the American equivalent of confessions of

15   judgment, as I understand them, to secure the payments.  The

16   evidence will show in this case that the payments that were

17   made to GAD were followed shortly thereafter in time with the

18   execution of these notes.  So they're linked to one another as

19   a matter of practicality.

20             I'm not going to say to you that the MOU or, indeed,

21   the notes reference the other, but as a practical matter, the

22   evidence will show that these notes were in the amounts that

23   were lent, advanced by the plaintiff in this case, and were

24   followed shortly thereafter with the execution of the notes.

25   So our position -- and we are not aware of any other debt

N8LClivC

1    obligation that GAD would owe to the plaintiff in this case,

2    but for the existence of these advances.

3            THE COURT:  Thank you.

4            Mr. Goldsmith, what is, as I understand defense

5    counsel, they say there are these notes out there and that they

6    represent restitution to your client, we'll put aside for the

7    moment whether that's restitution on the basis of the MOU at

8    issue here or some separate instruments that are not connected

9    to the MOU, but they say that you've received the remedy of

10   restitution.  So let's focus on this case where you are suing

11   to enforce the MOU.  Is there a damages calculation that you've

12   provided to the defendants?  What is the actual amount that

13   this trial would focus on?  What are you going to be asking the

14   jury for?

15           MR. GOLDSMITH:  Your Honor, I apologize, but as I sit

16   here today, I cannot tell you what that amount is.  I would

17   need to talk with my client and I could tell you approximately

18   what it is, but I'm going to be -- I'm not going to be within

19   or I may not be within 30, 40 percent.  So that's the answer to

20   that question.

21           But I want to respond, if I could --

22           THE COURT:  Let's focus on that for a second.  I'm

23   looking at the docket here.  Did the parties exchange

24   Rule 26(a) disclosures in this case?

25           MR. GOLDSMITH:  We did.

1          THE COURT:  Mr. Goldsmith, in your 26(a) disclosure

2     where you needed to calculate damages, what did you tell the

3     defendants was the calculation of the damages here?

4          MR. GOLDSMITH:  Your Honor, I am looking that up right

5     now.  I apologize.  My computer's a little bit slow and

6     catching up to me.

7          THE COURT:  That's fine, Mr. Goldsmith.  Let's hold

8     off because I have a couple more questions and then I'll give

9     you time to find the answer to that question.

10          So my separate question concerns the individual

11     defendants who are in this case.  Now, as I'm looking at the

12     MOU, it does not appear that those individual defendants are

13     parties to the MOU, and I believe that when Judge Cronan denied

14     in part the motion to dismiss, one of the issues he ran into

15     and the questions he had was why the individual defendants

16     would be liable on a cause of action on a contract they were

17     not parties to, and he urged your client to consider whether

18     those individual defendants should be in the case and cautioned

19     you that any claims against the individual defendants would

20     need to have a good-faith basis in the law and facts here.  So

21     given that the only claim being asserted is breach of contract

22     and the individual defendants are not parties to the contract,

23     what's the basis of the claim against those individuals?

24          MR. GOLDSMITH:  So under the MOU, they are required

25     to -- each of the individuals who are the owners of the

1   corporate defendant are required to contribute all of their

2   ownership of GAD to a newly formed entity, and they refused to

3   do that.  And so, we are suing them for specific performance to

4   require them to comply with the terms of the agreement that

5   they benefited from because we contributed the money that

6   allowed GAD to expand its production facilities.

7        THE COURT:  Right.  But what's the legal basis –– I

8   understand the relief that you are seeking from the individual

9   defendants.  My question is:  What is the legal basis for you

10  to pursue relief directly against them given that your claim

11  sounds in contract.  If you told me that you are seeking an

12  order for the defendant company, Gastronomico, to use its

13  powers to secure this relief from the individual defendants,

14  that's one thing, but what is the legal basis to get that

15  relief directly from the individual defendants?

16       MR. GOLDSMITH:  Well, the reason that we're seeking

17  against the individuals is that the company probably cannot

18  compel the defendant, the individual defendants to sign the

19  documents, but the company contractually agreed, they agreed

20  and approved and agreed to do it.  So I think it's in the

21  nature of a third-party beneficiary theory, that they have ––

22  they are benefited directly by this agreement because we

23  allowed the company that they collectively owned to

24  substantially increase its production capacity, as well as

25  significantly increased their market share in the United States

1    by our efforts, and that as a result of that, they are -- they

2    should be required to sign to -- to comply with the terms of

3    the agreement because, again, this was a memorandum of

4    understanding.  I think that what we have to establish for a

5    third-party beneficiary is existence of a contract, that the

6    contract was intended to benefit them, and the benefit is

7    immediate.  We believe that we can establish that.  We believe

8    that their presence in the case is necessary in order to get

9    effective relief.  And I believe, you know, this was -- the

10   defendants elected not to file a motion to dismiss our amended

11   pleading directing to that, but I believe we could point to law

12   that allows us to assert these claims against them in order for

13   us to receive full relief on a type of third-party beneficiary

14   provision.

15          THE COURT:  Thank you, Mr. Goldsmith.  And I

16   appreciate what you say about there not having been a motion

17   directed to this issue by the defendants.  I realize that they

18   did answer the complaint and did not file a summary judgment

19   motion here.

20          So here is what I am going to do, and this will be

21   reflected in an order placed on the docket.  I am going to set

22   a schedule for letters to be submitted on the election of

23   remedies issue that the defendants would like to file a

24   dispositive motion about.  I will tell you in advance that not

25   only based on the procedural default missing the summary

1  judgment deadline, but also given the discussion of the issue,

2  which seems to raise factual issues, I'm inclined to not permit

3  defendants to file a successive dispositive motion having not

4  filed one by the deadline.  We'll issue an order, I'll take a

5  look at letters from both sides on that issue, and if there

6  needs to be motion practice, we can handle that.

7          I will set a trial date in this case and I will set it

8  for trial on November 6th.  So that week, you're not going to

9  have the whole week to try this case.  I don't think, based on

10  what I reviewed, you're going to need the whole week.  I agree

11  that this is something that can probably be tried in three days

12  ideally, but we'll set it for November 6.  So you should put

13  that in your calendars.  We will send out an order that sets

14  dates for pretrial filings that are specified in our individual

15  practices and that will need to get ready for trial.

16          In connection with getting ready for trial, what I'll

17  say to Mr. Goldsmith, to you, is that if you do not have a

18  sound legal basis -- I understand there was no motion directed

19  to this issue, but if you feel like there's not a sound basis

20  for relief against the individual defendants, then just in the

21  interest of narrowing and sharpening the issues for trial, you

22  should consider whether all of the defendants need to remain in

23  this case.  So that's moving us closer to trial.

24          Let's talk for a second about settlement.  I know that

25  there was a mediation session that was unsuccessful previously

1    in this case, but now we're at the doorstep of trial.  It seems

2    like there's a long history here in this case, but I want to

3    make sure that the parties have spoken about settlement.

4         So why don't we start with the defendants here since,

5    Mr. Goldsmith, you've been helping us out here.  Mr. Lupkin or

6    Mr. Tennant, is there any possible resolution here short of a

7    trial?

8         MR. LUPKIN:  Mr. Tennant, you want to take this one?

9         MR. TENNANT:  Sure.

10        Thank you, your Honor.  It's David Tennant.

11        We had, as you indicated, a mediation session that was

12   not productive.  It was actually plaintiffs suggesting at the

13   close of the mediation to have party-to-party negotiations, and

14   we followed up with that several times and it went nowhere, no

15   response from plaintiff's counsel.  I don't know if there is an

16   opportunity for the parties to get together.  I had

17   specifically asked that the -- if there were to be such

18   party-to-party negotiations, that the mediation protocols

19   concerning the confidentiality would apply to those

20   party-to-party communications.  I'm not optimistic about the

21   opportunities that would lie with party-to-party

22   communications, but we're still open to that suggestion.

23        THE COURT:  Mr. Goldsmith, would you and your client

24   be open to those discussions?

25        MR. GOLDSMITH:  Yes, your Honor.  And I think -- I'm

1  not sure if something got lost in cyberspace, but I sent two

2  emails, including one a few weeks ago to Mr. Tennant providing

3  him the contact information for his clients to reach out to the

4  individuals that are involved in the marketing for these type

5  of products, which is what we had agreed to do, was to see --

6  we thought that a settlement could be -- could involve or could

7  start with the fact that my clients were much more successful

8  in marketing the product than after they cut us off and they

9  started marketing, and we thought that the people that we used,

10  they could talk to first to see if that might begin the process

11  of a discussion.  I had provided that information to

12  Mr. Tennant when he got back to me and apparently had not

13  received it.  I sent him another people email a few weeks ago.

14  So I think we can certainly do that and see if we can be, you

15  know, see if that might be successful, but -- so we're always

16  happy to try to see if there's something that we could do to

17  work it out.

18          THE COURT:  I appreciate that.

19          This is a case that I think is amenable to settlement

20  and I think should settle.  So I am going to, as part of the

21  order that we issue, ask the parties to meet and confer with

22  each other on the issue of settlement.  And when I say meet and

23  confer, I mean a real meet and confer where people are talking

24  either in person or over the phone directly about whether this

25  case can be resolved.  If there is any order or protocol that

1    you need me to put in place concerning confidentiality, I'm

2    happy to do that.  Of course the Federal Rules of Evidence

3    already provide a lot of protection on settlement

4    communications and the ability for those settlement

5    communications to be used during trial.  I can tell you that if

6    any party tried to use settlement communications here at the

7    upcoming trial, I will not take kindly to that.  This is the

8    Court's directive to have the parties have a good faith meet

9    and confer on these issues.

10          So that order will issue either today or, at the

11   latest, tomorrow so you have a sense of what you need to do

12   moving forward and you can start getting ready for trial and

13   also have the settlement discussions and we'll take it from

14   there.

15          Are there any questions?

16          MR. LUPKIN:  Yes, there is, your Honor.  Thank you.

17   May I be heard briefly on the trial date?

18          THE COURT:  Sure.

19          MR. LUPKIN:  Again, I'm new to the case.  I have a

20   longstanding vacation with, among other things, two of my

21   daughters who live abroad, and I will only be returning the

22   week prior to that.  So if the Court and counsel on the other

23   side would be amenable or willing, if we could just push it a

24   couple of weeks into later in November so I am not under the

25   bum's rush when I see my daughters, who I only get to see a

1    couple of times a year.

2         THE COURT:  Well, I'm happy to move it a week to the

3    13th.  Would that help on your end?  So you'll have two weeks.

4         MR. LUPKIN:  It certainly does.

5         THE COURT:  We'll set it for the 13th instead of the

6    6th, and that will give you an extra week, and I appreciate it.

7         Mr. Goldsmith, anything from you on the plaintiff's

8    side?

9         MR. GOLDSMITH:  No, your Honor, we have no objection

10   to the 13th.  That works a little better for me anyway.

11        THE COURT:  Perfect.  Well, I appreciate the parties'

12   good work here and, again, I hope you can have some good

13   discussions concerning resolution of this case, and if not, we

14   will have trial in November.  I will issue the order that I

15   mentioned about the letters on the election of remedies issue,

16   and we'll also work on the pretrial deadlines that the parties

17   will need to follow.

18        Anything else?

19        MR. LUPKIN:  Yes, there's one other thing.  You had

20   mentioned the Rule 26 disclosures on the calculation of

21   damages.  I just pulled them up and, as I'm looking at them, I

22   don't see any concrete calculation of damages other than just,

23   you know, categories of damages.  I would ask that, as part of

24   the pretrial order, there would be an articulation as to what

25   the precise damages are and what components they fall into.

1    THE COURT:  Any problem with that, Mr. Goldsmith?

2    MR. GOLDSMITH:  No, your Honor.  And he's correct, I

3  did pull it up and we have -- we describe in detail what the

4  categories of damages are, but we don't do a calculation.

5    THE COURT:  And because, obviously, that may be an

6  issue that the parties would appreciate clarification about in

7  the context of discussing settlement, I may ask that that be

8  addressed in the letters that we previously discussed.  Okay?

9    MR. GOLDSMITH:  Thank you.

10    MR. LUPKIN:  Thank you, your Honor.

11    THE COURT:  Thank you, everyone.  We are adjourned.

12                          *  *  *

13

14

15

16

17

18

19

20

21

22

23

24

25