**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

LIVE BRANDS HOLDINGS, LLC,
Plaintiff,

v.                                                        Case No. 1:20-cv-1213

GASTRONOMICO GRACIAS A DIOS,
SOCIEDAD RESPONSABILIDAD
LIMITADA de CAPITAL VARIABLE;
XAIME NIEMBRO ALVAREZ;
PABLO LOPEZ VARGAS;
JOSE ENRIQUE JIMENEZ BARCENAS;
and OSCAR HERNANDEZ SANTIAGO,
Defendants.
_____

<u>**PLAINTIFF LIVE BRANDS' OMNIBUS MOTION IN LIMINE**</u>

Plaintiff moves *in limine* to prevent Defendants from presenting improper reference, comments, or presentation of evidence as follows:

**I.        Introduction**

This lawsuit was brought by Plaintiff, Live Brands Holdings, LLC (Live Brands) against Gastronomico Gracias a Dio, Sociedad Responsabilidad Limitada de Capital Variable (GAD) and the four shareholders of GAD for breach of contract (GAD and its shareholders are collectively, the Defendants).  Live Brands, the successor-in-interest to Domaine Select Wines & Spirits, LLC (DSWS), sued the Defendants for breach of a binding Memorandum of Understanding (MOU) between DSWS and GAD.  Specifically, in exchange for an investment by DSWS, GAD agreed to transfer 100% of the shares of GAD into a newly created Florida entity which would be owned 50% by the shareholders of GAD and 50% by DSWS.  Although DSWS complied with all of the funding and other requirements of the MOU, GAD refused to transfer the shares.

Live Brands sued GAD for breach of contract seeking damages for the value of the 50% ownership interest in GAD and, in the alternative, seek an injunction compelling GAD and its shareholders to comply with the MOU by transferring the ownership of GAD into a newly created Florida entity in which the GAD shareholders own 50% and Live Brands own the other 50%.   Live Brands files this omnibus motion in limine to preclude the Defendants from seeking to introduce into evidence, elicit testimony, or mention to the jury certain matters which are irrelevant or, even if relevant, any such relevance is outweighed by unfair prejudice, confusion of the issues, or they will mislead the jury.

## II.      In Limine Motions, Relevance and Rule 403(b)

"The purpose of an in limine motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).   "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001).   Further, a district court's ruling on a motion in limine is preliminary and "subject to change when the case unfolds."  *Luce v. United States*, 469 U.S. 38, 41 (1984).

The admissibility of evidence at trial is governed by the Federal Rules of Evidence. Federal Rule of Evidence 402 ("Rule 402") provides that all relevant evidence is admissible except as otherwise provided by the Constitution, Act of Congress, or applicable rule.   Fed. R. Evid. 402.   Federal Rule of Evidence 401 defines relevant evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence," so long as "the fact is of consequence in determining the

action." Fed. R. Evid. 401. The Second Circuit has characterized the relevance threshold as "very low." *See United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (quoting *United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008)). To be relevant, evidence need not prove a fact in issue by itself, but only have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *McKoy v. North Carolina*, 494 U.S. 433, 440 (1990) (quoting *New Jersey v. T.L.O.,* 469 U.S. 325, 345 (1985)).

Even if evidence is relevant, however, the Court must balance the probative value of the evidence versus the unfair prejudice which will exist if the evidence is admitted. Fed. R. Evid. 403(b). Rule 403 permits the exclusion of relevant evidence, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. District courts wield broad discretion in making decisions under this probative prejudice balancing test. *See Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 327-28 (2d Cir. 1986); *see also United States v. Abu-Jihaad*, 630 F.3d 102, 131 (2d Cir. 2010) ("We review a district court's evidentiary rulings deferentially, mindful of its superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice."). "In making a Rule 403 determination, courts should ask whether the evidence's proper value 'is more than matched by [the possibility] . . . that it will divert the jury from the facts which should control their verdict.'" *Bensen v. Am. Ultramar Ltd*., No. 92-CV-4420, 1996 WL 422262, at *6 (S.D.N.Y. July 29, 1996) (quoting *United States v. Krulewitch*, 145 F.2d 76, 80 (2d Cir. 1944)). For the reasons set forth below, this Court should grant the motion in limine on the following issues.

### III.    Defendants Should be Precluded from Arguing that the MOU is Unenforceable Because a Definitive Agreement Was Not Signed

Defendants filed a motion to dismiss, which was denied, arguing that the MOU provided that if a definitive agreement was not entered into by September 30, 2018, that the Live Brands has no rights under the MOU.  Defendants should be precluded from making this argument before the jury for the following reasons.  First, Defendants' argument is an affirmative defense, an attempt to avoid the enforceability of the contract, and therefore must be pled.  Defendants, however, did not raise this as an affirmative defense (Dkt. 77, p. 6-7) and therefore the defense is barred.  *Geomc Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 99 (2d Cir. 2019) (a defense presented beyond the normal time limits of the Rules, especially at a late stage in the litigation is barred, citing *Anderson v. National Producing Co.*, 253 F.2d 834, 838 (2d Cir. 1958)).

Additionally, for the reasons set forth in this Court's order denying defendants' Motion to Dismiss (Dkt. 73) and denying Defendants' request for file a motion for reconsideration of the order denying the motion to dismiss (Dkt. 78), the fact that a definitive agreement was not signed prior to the date specified in the MOU is not a defense since the alleged breach occurred while the MOU was still an enforceable agreement. (Dkt. 73, p. 9-10) (citing *Hajdu Nemeth v. Zachariou*, 765 N.Y.S.2d 597 (App. Div. 2003)).

### IV.    Defendants Should be Barred and/or Limited from Introducing into Evidence or Eliciting Testimony Regarding Pre-Contract Negotiations

Defendants seek to introduce evidence or elicit testimony regarding negotiations that took place prior to the MOU's execution, which is considered extrinsic evidence that is barred by the parol evidence rule. "It is well established that a court may not admit

extrinsic evidence in order to determine the meaning of an unambiguous contract. . . . As to such a contract, a party is precluded from introducing extrinsic evidence of the contract's purpose in order to vary the plain meaning of the writing, *Investors Ins. Co. of America v. Dorinco Reinsurance Co.*, 917 F.2d 100, 104 (2d Cir. 1990), or in order to increase [or decrease] a party's obligations where those obligations were explicitly outlined in the contract itself, *Gerard v. Almouli*, 746 F.2d 936,939 (2d Cir. 1984)." *Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002) (cleaned up).

Any pre-contractual negotiations sought to be introduced as evidence at trial should be limited only to the extent that the MOU, as indicated in this Court's order denying defendants' Motion to Dismiss (Dkt. 73), "is not clear as to whether all, or any specific one, of its terms had to be completed prior to the expiration of the MOU on September 30, 2018." Otherwise, the MOU is an unambiguous contract, thus precluding comprehensive introduction of pre-contract negotiations. *ESPN, Inc. v. Office of Com'r of Baseball*, 76 F. Supp. 2d 383, 402 (S.D.N.Y. 1999) ("[C]ontract language is unambiguous where it 'has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference in opinion." [*Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 429 (2d Cir. 1992)] (alteration in original). Moreover, contract language 'is not made ambiguous simply because the parties urge different interpretations. Nor does ambiguity exist where one party's view strain[s] the contract language beyond its reasonable and ordinary meaning.' *Id*."). The MOU expressly dictates the obligations of the parties, and Plaintiff contends that all necessary and relevant information can be gleaned from the face of the MOU.

While Defendants could introduce parol evidence to *support* the plain meaning of the MOU, that is only allowed "where the writing [does not] appear upon inspection to be a complete contract," and where "the parol evidence [is] consistent with and not contradictory to" the express terms of the MOU. *See Royal Bank of Canada v. Mahrle*, 818 F. Supp. 60, 62 (S.D.N.Y. 1993) (citing *First Intern. Bank of Israel, Ltd. v. Blankstein & Son, Inc.*, 449 N.Y.S. 2d 737, 739 (1st Dep't 1982), *aff'd*, 465 N.Y.S.2d 888 (1983)). Defendants should be precluded, or at least limited, from introducing evidence or eliciting testimony that predates execution of the contract.

## V.      Settlement Negotiations Should be Excluded

Defendants may attempt to put into evidence, elicit testimony, or mention to the jury certain information comprising settlement negotiations. Defendants should be precluded from doing so pursuant to Federal Rule of Evidence 408. Rule 408 provides that the following evidence is not admissible to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

(1)      furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and

(2)      conduct or a statement made during compromise negotiations about the claim—except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Fed. R. Evid. 408.

## VI.    Evidence of Gustavo Hernandez Frieri's Arrest or Later Conviction Should be Excluded

Gustavo Hernandez Frieri (Mr. Hernandez) is a former officer of DSWS, who was charged in 2019 with money laundering regarding a financial services business that he operated.  Immediately after Mr. Hernandez was arrested, he resigned from DSWS.  Later in 2021 Mr. Hernandez pled guilty to a single count of money laundering.  Mr. Hernandez is not identified as a witness by either party and will not testify at trial.

Defendants should be precluded from presenting evidence, eliciting testimony, or mentioning that Mr. Hernandez was arrested, pled guilty or was adjudicated guilty of any criminal offence.  Mr. Hernandez' arrest in 2019 and conviction in 2021 is irrelevant to any issue in this case.  Federal Rule of Evidence 609, which deals with when prior criminal convictions can be used against a testifying witness, does not apply because Mr. Hernandez will not testify in this case.  Defendants may argue that Mr. Hernandez' arrest is relevant because Defendants may claim that the reason Defendants refused to comply with their obligations under the MOU is that Mr. Hernandez was arrested.  However, Mr. Hernandez' arrest, and conviction almost two years after the breach, is not a defense which obviates or excuses Defendants' obligations under the MOU.

Further, even if there is some relevance to Mr. Hernandez' arrest or conviction, any such relevance is far outweighed by the unfair prejudice and confusion of the issues, which will likely mislead the jury into believing that Mr. Hernandez arrest or conviction is a defense to the breach of contract.  The issues in this case are whether GAD breached the contract and, if so, the damages caused as a result of the breach.  Mr. Hernadez' arrest and later conviction will unfairly prejudice, confuse, and mislead the jury and should be excluded.

**VII.   Any Mention of DSWS's Purported Breach of the Separate Distribution Agreement Should Be Excluded**

Defendants intend to introduce evidence or elicit testimony related to DSWS's alleged breach of a separate and distinct distribution agreement with Defendants, evidently as a defense to Defendants' breach of the MOU. The distribution agreement is not relevant to, or necessary for the resolution of, the subject matter of this case. Any mention of the distribution agreement with DSWS would operate as a worthless distraction that unfairly prejudices, confuses, and misleads the jury.

**VIII.   Undisclosed Witnesses Should Not be Allowed to Testify**

Defendants intend to call witnesses not previously disclosed; specifically, Victor R. Vega Alvarez.  Federal Rule of Civil Procedure 26 requires disclosure during discovery of the name of "each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(i).  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). A district court may preclude the testimony of an untimely-disclosed witness, but must first consider four factors:

(1) the party's explanation for the failure to comply with the [disclosure requirement];

(2) the importance of the testimony of the precluded witness;

(3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and

(4) the possibility of a continuance.

*Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006); *see also Outley v. City of New York*, 837 F.2d 587, 590 (2d Cir. 1988).

Here, there is no justification for the belated disclosure of Mr. Mr. Vega Alvaraz nor is his inclusion as a trial witness harmless because the substance of his anticipated testimony is also subject to this motion in limine (*see* §§ V, X and XII).

### IX.    Defendants Should Not Be Able to Use Undisclosed Exhibits

Defendants intend to use exhibits that were not previously identified. Federal Rule of Civil Procedure 26 requires disclosure during discovery of "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(B). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). A district court may preclude untimely disclosed evidence, but must first consider four factors:

(1) the party's explanation for the failure to comply with the [disclosure requirement];

(2) the importance of the precluded evidence;

(3) the prejudice suffered by the opposing party as a result of having to prepare to address the new evidence; and

(4) the possibility of a continuance.

*Lujan v. Cabana Management, Inc.*, 284 F.R.D. 50, 68 (E.D.N.Y. 2012) (citing *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)).

### X.    The Mexican Litigation Should Be Excluded

Defendants may attempt to put into evidence, elicit testimony, or mention to the jury about litigation brought by Live Brands against GAD to enforce pagarés, obligations under Mexican law which are similar to post-dated checks.  Defendants may attempt to argue that the Mexican litigation is relevant to support their defense that Live Brands elected its remedies by filing suit in Mexico on the pagarés.

Defendants are mistaken, fundamentally misunderstanding the election of remedies doctrine.  The election of remedies doctrine in a contract claim prohibits a party from simultaneously affirming the validity of a contract by seeking to enforce the contract and, at the same time, negate the validity of a contract by, for example, seeking its recission. *Phlo Corp. v. Stevens*, No. 00 CIV. 3619 (DC), 2001 WL 630491 *4 (S.D.N.Y. June 7, 2001), *aff'd*, 62 F. App'x 377 (2d Cir. 2003) ("A classic illustration of the doctrine occurs in the context of a breach of contract. In such a case, the non-breaching party may elect to continue to perform the contract or it may refuse to continue and terminate the agreement; once the first option is selected, however, the party may not seek to terminate the contract, for such a claim would be inconsistent with previously elected 'remedy.'"); *accord Inter-Power of New York Inc. v. Niagara Mohawk Power Corp.*, 686 N.Y.S.2d 911, 913 (1999); *Whalen v. Stuart*, 194 N.Y. 495, 502 (1909).

The *Phlo Corp*. is directly on point. In that case, the defendant agreed to lend the plaintiff $250,000, and the plaintiff issued the defendant a promissory note that stated that plaintiff would give a certain amount of common stock shares to the defendant as

collateral for the $250,000 loan. After plaintiff defaulted on the loan repayment, the defendant, as plaintiff in a prior separate action, secured a judgment in its favor for the amount of the original loan and interest.  Subsequently, the plaintiff instituted a separate action against the defendant, alleging several claims, and the defendant counterclaimed demanding specific performance of the promissory note, including the issuance of the common stock. In response to the defendant's counterclaim for specific performance, the plaintiff raised an election of remedies defense and sought summary judgment, claiming that the defendant could not seek specific performance given that it had already won a judgment for the return of the loan amount. The Court rejected the election of remedies defense, holding that the doctrine did not apply to bar the defendant's counterclaim for specific performance, stating that the "harsh" doctrine of election of remedies should not be applied to a "party whose claims can be reconciled"—the court explained that the plaintiff had merely identified that the two remedies had arisen from the same factual nexus but failed to demonstrate that the remedies could not be reconciled. *Phlo Corp.* at *4; *see also Stoetzel v. Wappingers Cent. Sch. Dist.*, 118 A.D.2d 636, 499 N.Y.S.2d 788 (1986) ("Election of remedies is a harsh doctrine and should only be applied where there has clearly been an irrevocable election. The doctrine is intended to prevent vexatious litigation.") (internal citation omitted).

Similarly, in this case, Defendants merely point to the Mexican litigation as originating from the same factual nexus as the MOU, but Defendants cannot meet its burden to show that Plaintiff has taken an inconsistent position regarding the MOU, or that it has elected irreconcilable remedies. *See In re Riverside Nursing Home,* 144 B.R. 951, 957 (S.D.N.Y. 1992) ("However, where two causes of action that are not inconsistent

arise from a single course of events, the doctrine of election of remedies does not preclude a plaintiff from asserting both claims.").   In the instant case, the election of remedies doctrine is even less applicable than in *Phlo Corp.* In *Phlo Corp.* the party that had collected the loan amount on the promissory note in the first action and who had then sought specific performance of the promissory note, was basing both claims on the same legal instrument. However, here, the Mexican litigation was not based on the MOU, but on the wholly separate pagarés. The Mexican litigation and the current litigation are less related than the actions at issue in *Phlo Corp.*

Contrary to Defendants' election of remedies defense, a non-breaching party can seek damages asserting breach of contract through failure to perform contractual duties and seek specific performance as a remedy, without inconsistency. *Phlo Corp.*, WL 630491 at *4. The reason is that "remedies" in the "election of remedies" doctrine is not referring to remedies such as damages as opposed to specific performance, but rather it is referring to remedies based on enforcement of a contract versus remedies based on avoidance of a contract—only the latter implicates an election of remedies defense. *Id; Balleisen v. Schiff*, 121 A.D. 285, 286, 105 N.Y.S. 692 (App. Div. 1907).   Since money damages for breach of contract and specific performance of a contract are alternative remedies which affirm the existence of a contract, they are not inconsistent. *accord Inter-Power of New York Inc. v. Niagara Mohawk Power Corp.*, 686 N.Y.S.2d 911, 913 (1999); *Whalen v. Stuart*, 194 N.Y. 495, 502 (1909).

The *Balleisen* Court explained: "…the action for specific performance and the action for damages are both based on the contract and the defendant's default. They are, therefore, not inconsistent. If one stood on the affirmance of the contract, and the other

on a disaffirmance, the situation might be different; but the action for damages for the breach is on the contract." 121 A.D. at 286.  Here, Defendants have not and cannot identify a single instance, either during this litigation or the Mexican litigation, where Plaintiff sought to avoid the MOU by rescinding it or asserting its invalidity or unenforceability.  Plaintiff has always, unequivocally maintained that the MOU is valid and enforceable, and that it is seeking specific performance of the MOU as an alternative to the damages it is seeking in this case. The Mexican litigation proceeded on the basis of the pagarés, which are entirely independent legal instruments.

Enforcement of the pagarés is not inconsistent with the enforcement of the MOU, whether by way of damages or specific performance.  Whether the pagarés are partial security for the MOU is immaterial.  Plaintiff merely sought to collect the money it is owed under the pagarés, recognizing that it will either have to reduce any money judgment it receives in this case by the amount it has already collected on the pagarés or it will have to fund the full amounts it agreed to fund in the MOU in order to obtain specific performance, both actions would be taken by the Court post-verdict.  Plaintiff has always taken the position that the MOU is valid and enforceable, that it seeks its enforcement, and that it is willing and ready to perform its duties under the MOU.

For these reasons, Defendants should be prohibited from putting on evidence, eliciting testimony or mentioning anything about the Mexican litigation because the Mexican litigation does not constitute an election of remedies as a matter of law.  As such, the Mexican litigation is irrelevant and to the extent there is any relevance such relevance is far outweighed by the unfair prejudice, confusion of the issues, and the significant potential that the jury will be misled as to the issues for it to decide.

**XI.    Defendants' Affirmative Defense for Failure of Consideration Should Be Excluded**

Defendants raise failure of consideration as an affirmative defense, stating that once Live Brands received the $250,000 from the pagarés in Mexico, there was no longer consideration for the MOU. However, "[c]ourts evaluate the presence of consideration at the time the parties contracted," not at a later date. *McDonald v. Brown*, No. 12 CIV. 7109 (WHP), 2014 WL 116003, at *4 (S.D.N.Y. Jan. 13, 2014). Defendants' contention that consideration for the MOU failed upon Live Brands' receipt of monies from the pagarés— an event that occurred long after execution of the MOU—flies in the face of this universally acknowledged principle. In any event, Defendants have conceded, as it relates to the pagarés, that Defendants only paid back a portion of the money advanced. Accordingly, the Court should exclude the affirmative defense for failure of consideration.

**XII.    Conclusion**

For the reasons set forth above, this Court should grant this Motion and prohibit Defendants from introducing into evidence, eliciting testimony, or otherwise mentioning the issues and facts identified in this Motion.

/s/ *John D. Goldsmith*
John D. Goldsmith
Florida Bar No. 0444278
jgoldsmith@trenam.com
idawkins@trenam.com
svanboskerck@trenam.com
Catherine M. DiPaolo
FBN 71685 (PHV Application Pending)
cdipaolo@trenam.com
nhawk@trenam.com
Trenam, Kemker, Scharf, Barkin, Frye,
O'Neill & Mullis, P.A.
101 E. Kennedy Blvd., Suite 2700

14

Tampa, FL  33602
Tel:  813-223-7474
Fax: 813-229-6553
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **Plaintiff's Omnibus Motion in Limine** was electronically filed with the Court on December 4, 2023 by using the Court's CM/ECF system, which will send a notice of electronic filing and copy to all counsel of record:

David H. Tennant, Esq,
Law Office of David Tennant PLLC
3349 Monroe Avenue, Suite 345
Rochester, NY  14618
david.tennant@appellatezealot.com

 /s/ *John D. Goldsmith*
Attorney